STATE OF CONNECTICUT *v.* MARIO A. VERRILLI.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued March 6—decided April 12, 1945.

*John J. Hunt,* for the appellant (defendant).

*Otto J. Saur,* assistant state's attorney, with whom, on the brief, was *Lorin W. Willis,* state's attorney, for the appellee (plaintiff).

ELLS, J. The question is whether money used for gambling is subject to seizure within the meaning of § 740g of the 1943 Supplement to the General Statutes.

The facts are not in dispute. As a result of a telephone call, a police officer went to a certain location in Bridgeport and waited for the operator of an automobile parked there. The defendant came out of a building and as he was about to get into the parked

car the officer accosted him, identified himself by showing his shield, and informed the defendant that he had received a complaint that the defendant was picking up policy slips. The latter voluntarily entered the police car and was driven to headquarters. When they arrived in front of that building the officer asked the defendant what he had in his possession, whereupon the latter took from his pocket a quantity of policy slips intermingled with money and handed them to the officer. The defendant was then taken into the headquarters, where he was asked by the same officer if he had any more, whereupon the defendant took from his pocket another quantity of policy slips intermingled with money and handed them to the officer. The total number of policy slips was two hundred and thirty-eight and the money amounted to $178. The defendant was then placed under arrest. The officer at all times acted without a warrant for the defendant's arrest or for the seizure of the articles. The money was the proceeds of bets represented by the policy slips, and as such was used for gambling. Ultimately the defendant pleaded guilty of a violation of § 6337 of the General Statutes against policy playing. In subsequent proceedings, duly taken, the court adjudged the policy slips and the money to be a nuisance and ordered them to be disposed of according to law. The defendant appealed from the judgment, claiming that our statutes do not authorize the seizure of money from the person, with or without a warrant; that, therefore, the money so seized was not subject to condemnation; and that the judgment should be reversed and the seized money ordered returned to the defendant.

The determinative factor is the original seizure of the money. In order for the money to be properly condemned, it must have been properly seized. If the

existing statutes did not authorize its seizure, then it was improperly condemned.

Section 6325 of the General Statutes provides that "Any sheriff, deputy sheriff, constable, chief of police or police officer may, within his precincts, arrest, without a warrant, any person whom he shall find in possession of any slot machine or other device used for gambling and seize such slot machine or other device found in the possession of such person, and may detain such person and such device in some place of safe-keeping until warrants can be procured for the arrest of such person and the seizure of such slot machine or other device." An amendment made in 1933 did not materially change the provision now under consideration. General Statutes, Cum. Sup. 1935, § 1708c. In 1943, the provision was amended to provide that such "officer may, within his precincts, arrest, without a warrant, any person whom he shall find in possession of any slot machine, gambling device or other equipment, paraphernalia, papers, books or money, used for gambling . . . and seize such slot machine or other device found in the possession of such person, and may detain such person and such device in some place of safe-keeping until warrants can be procured for the arrest of such person and the seizure of such slot machine or other device." General Statutes, Sup. 1943, § 740g. The defendant concedes that this new enactment authorizes the arrest, without a warrant, of a person found in possession of money used for gambling, but claims that it does not expressly or impliedly authorize the seizure of money used for such purposes. The contention is that the seizure clause has not been changed, that it authorizes only the seizure of "such slot machine or other device," and that money is not within the meaning of the term device.

In the original statute, § 6325, supra, the arrest

clause referred to "any slot machine or other device used for gambling"; the seizure clause referred to "such slot machine or other device," that is, a slot machine or other device used for gambling. The arrest clause of the existing statute, § 740g, supra, clarified and extended the meaning of "other device" by substituting "gambling device or other equipment, paraphernalia, papers, books or money, used for gambling." The seizure clause authorized the taking of "such slot machine or other device." "Such . . . other device" manifestly means the devices defined in the arrest clause. There is nothing else the word "such" could refer to. It follows, therefore, that the seizure clause authorized the seizure of money used for gambling.

The legislature could have repeated in the seizure clause all the new language it used in the arrest clause. It chose to avoid repetition by making a definite reference to that language, and by including it through the medium of the words "such . . . other device." The word "such" is controlling. See 2 Sutherland, Statutory Construction (3d Ed.), p. 385.

In view of the express provisions of the applicable statute, it becomes unnecessary to discuss the cases in other states cited in the defendant's brief, or the various other statutes in our state there cited.

There is no error.

In this opinion the other judges concurred.