STATE OF CONNECTICUT *v.* VINCENT J. ROSARBO ET AL.

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 6-15751 (In Rem)

Argued August 5—decided December 24, 1963

*Sherman Drutman,* of New Haven, assistant prosecuting attorney, for the appellant (plaintiff).

*Monroe S. Gordon,* of New Britain, for the appellee (named defendant).

PRUYN, J.   This action was brought by the state under the provisions of § 54-35 of the General Statutes to condemn the sum of $59, taken from the pockets of the named defendant and alleged to have

been used in an illegal dice game. The facts as found by the court and as to which there is no dispute are as follows: On May 26, 1963, members of the New Haven police department had under surveillance for over an hour this defendant and several other persons as they were engaged in a dice game in the rear of premises at 134 Wooster Street, New Haven. During the course of the game, all of the participants took money out of their pockets and put money back into them. The police raided the game while it was still in progress and took the defendant and the other participants into custody. They were forthwith removed to the New Haven police station, where they were searched and the sum of $59 was taken from the pockets of the defendant. No money was taken from the game itself. The defendant was found guilty of violating the gaming statute, § 53-277, on that date and was fined. No warrant of any kind, search, arrest or seizure, was applied for or obtained at any time.

The sole question of law presented on this appeal, as stipulated by the parties, is the applicability of § 53-279 of the General Statutes to the facts as found by the court.[1] Section 53-279 has since been amended by Public Acts 1963, No. 652, § 9. A preliminary

---

[1] "Sec. 53-279. ARREST OF KEEPER OF GAMBLING EQUIPMENT; SEIZURE OF DEVICE. Any sheriff, deputy sheriff, constable, chief of police or police officer may, within his precinct, arrest, without a warrant, any person whom he finds in possession of any slot machine, gambling device or other equipment, paraphernalia, papers, books or money, used for gambling, or used or designed in violation of the provisions of section 53-278, and seize such slot machine or other device found in the possession of such person, and may detain such person and such device in some place of safe-keeping until warrants can be procured for the arrest of such person and the seizure of such slot machine or other device. The officer making such arrest or seizure shall immediately make complaint to the proper prosecuting officer, who shall forthwith make his written complaint to some judge having jurisdiction, and such judge shall issue his warrant, based on such complaint, and, in case of seizure, action shall then be taken thereon pursuant to the provisions of sections 54-33 and 54 35."

procedural question arises, however, as to whether the state has the right of appeal in this case. This depends on whether this in rem action is a civil action. Ordinarily, the state has no right to appeal a judgment in a criminal case but may do so only with permission of the court—as to judgments of the Superior Court. General Statutes § 54-96. We need not consider whether the state, in a criminal case in the Circuit Court, has such right of appeal, for we conclude that the case before us is a civil case. Proceedings to condemn gambling instruments are authorized by § 54-35.[2] Although seizure of property

[2] "Sec. 54-35. CONDEMNATION OF GAMBLING IMPLEMENTS; NOTICE. When, pursuant to section 53-279, 54-29, 54-33 or 54-34, any article or articles have been seized upon such warrant, the judge or court issuing such warrant shall, within forty-eight hours after such seizure, cause to be left with the owner of the article or articles so seized or at his usual place of abode, if he is known, or, if not, with the person apparently in charge of such articles or, if there is no such person, at the place where such articles were so seized, a summons notifying the owner and all others whom it may concern to appear before such court or judge, at a place and time named in such notice, which shall not be less than six nor more than twelve days after the service thereof, then and there to show cause if any they have why such articles should not be adjudged a nuisance and ordered to be destroyed. Such summons . . . shall describe such articles with reasonable certainty and state when and where and why the same were seized. If the owner of such articles or any person claiming any interest in the same appears, he shall be made a party defendant in such case. The informing officer or the complainants or either of them may appear and prosecute such complaint, and, if the judge or court finds the allegations of such complaint to be true and that such articles or any of them have been kept with the intent to violate any of the criminal laws of this state, he or it shall render judgment that such articles are a nuisance and order the same to be forthwith destroyed or disposed of to a charitable or educational institution or to a governmental institution. When no service has been made upon the known owner of such articles and no person appears claiming any interest in the same, the judge or court may, at his or its discretion, cause a further summons to be published in any newspaper . . . and shall then proceed to trial and judgment. When any money or valuable prize has been seized upon such warrant and condemned under the provisions of this section, such money or valuable prize shall become the property of the state."

used for illegal purposes is part of a criminal proceeding, the action to condemn such property is not a criminal proceeding but is a separate civil action, in rem, in which the guilt or innocence of the owner of the property is not in issue but in which the res is considered the offender. See *Pickett* v. *Marcucci's Liquors,* 112 Conn. 169, 179; *Alcorn* v. *Alexandrovicz,* 112 Conn. 618, 623; *Ely* v. *Bugbee,* 90 Conn. 584, 591; *State* v. *Brennan's Liquors,* 25 Conn. 278, 285; *State* v. *Verrilli,* 132 Conn. 46, 49; *State* v. *A Table,* 16 Conn. Sup. 302, 303. The case at bar being a civil action and the state as plaintiff having a pecuniary interest therein under § 54-35 and considering itself aggrieved by the judgment herein, its appeal is properly before us.

Section 53-279 authorizes the arrest without a warrant of any person "in possession of" any slot machine or other device therein mentioned or money "used for gambling," and the seizure of "such slot machine or other device found in the possession of such person." The arresting officer is authorized to detain the person and the device until warrants of arrest and seizure are obtained; the arresting officer is required to apply for and obtain such warrants, "and, in case of seizure, action shall then be taken thereon pursuant to the provisions of sections 54-33 and 54-35." Section 53-279, in substantially its present form, was enacted as chapter 83 of the Public Acts of 1911. It originally applied by its terms only to slot machines or other devices used for gambling, but it was amended in 1943 to read "slot machine, gambling device or other equipment, paraphernalia, papers, books or money, used for gambling." Sup. 1943, § 740g. The state argues that this statute applies to persons merely in possession of gambling devices and not to persons caught in the act of operating or utilizing such devices, as the latter could be arrested and the devices seized without a warrant.

There is no merit to this argument. There can be no doubt that the defendant was "in possession of . . . money, used for gambling," and that money is included in the term "such . . . other device" in the seizure clause of the statute. See *State* v. *Verrilli,* supra, 48, 49. The language of the statute is clear and unambiguous. No such distinction as the state claims can be made. *State* v. *Nelson,* 126 Conn. 412, 416. While the defendant could be arrested without a warrant under § 6-49 as being apprehended in the illegal act and anything used by him to commit the offense could be seized as incident to the arrest and utilized as evidence of his guilt, there is no provision in that statute for the condemnation of the seized property. There is no inconsistency between § 53-279 and § 6-49. If the circumstances warrant, the arresting officer may make an on-sight arrest and seizure without a warrant, the seized articles being usable solely as evidence of guilt and then returned to the accused or otherwise disposed of under § 54-36. *Bruchal* v. *Smith,* 109 Conn. 316, 321. Or, he may proceed initially without a warrant under § 53-279, as he did in the case before us. If he chooses the latter alternative, he is required to detain the accused and the seized paraphernalia until arrest and seizure warrants can be obtained; and he shall make immediate complaint to the proper prosecuting officer, who shall apply to a judge having jurisdiction for a warrant, which the judge shall issue; in case of seizure, action to condemn the property seized shall be taken under §§ 54-33 and 54-35.

Although it may seem anomalous to require as the basis for a condemnation proceeding an arrest and seizure warrant after the accused has been arrested and the property seized, the language of the statutes involved reveals a legislative intent that a warrant of seizure is a prerequisite to any proceedings to condemn seized property used for gam-

bling.[3] Provisions of a similar nature authorizing arrest, search and seizure without warrant in connection with violations of the state liquor laws and requiring a retrospective warrant of seizure as a prerequisite to condemnation of the liquor seized without a warrant have been on the statute books of Connecticut for many years. See §§ 30-107, 30-69, 30-70; *Pickett* v. *Marcucci's Liquors,* 112 Conn. 169, 179.

Statutes providing for the seizure of gambling paraphernalia have long been on the statute books of Connecticut. The first such statute was enacted in 1805 and provided that on complaint that the complainant had cause to suspect that any "billiard table or E O table" was kept or concealed in any building in the town, two justices of the peace might issue a warrant of search and seizure and order summary destruction of any such seized table. Statutes, 1808, pp. 362-63, §§ 3, 4. In 1834 the seizure, upon complaint and issuance of warrant, of obscene literature and gambling implements and their summary destruction, on the finding of the judge that such gambling implements were used for gaming, were authorized. Public Acts 1834, p. 496, §§ 2, 3. In the 1918 Revision, § 6589, the destruction was made subject to the condemnation procedure in § 6594 (now § 54-35). The 1834 statute is now contained, in substantially its original form with the 1918 amendment, in §§ 54-29 and 54-30, the latter section providing for destruction of the gambling instruments after proceedings had as provided in

---

[3] Public Acts 1963, No. 652 (General Statutes §§ 53-279, 54-33a— 54-33g) substantially amended the statutes relating to searches and seizures. While this act is not applicable to the case before us because it did not take effect until July 2, 1963, after the date of the offense herein, it is interesting to note that in connection with gambling devices the legislature continued to require a retrospective warrant of seizure as the basis for a proceeding to condemn devices seized without a warrant under § 53-279.

§ 54-35. A further statute authorizes the seizure, upon complaint and issuance of warrant, of gambling and lottery implements (§ 54-33), with the right to search the garments of any person believed to have them concealed therein (§ 54-34). Section 54-33 originated in substantially its present form as § 1 of chapter 9 of the Public Acts of 1895, and § 54-34 as chapter 121 of the Public Acts of 1901. Finally the third statute, § 53-279, the one involved in the case at bar, authorizing seizure without a warrant, was enacted in 1911, as heretofore stated.

The procedures for condemnation of gambling instruments had their origin in substantially their present form in § 2 of chapter 9 of the Public Acts of 1895 and applied first to the condemnation of property seized under the predecessor of § 54-33, then later to seizures under the predecessors of §§ 54-29, 54-30 and 54-34. The seizures under all these sections required a warrant of seizure. It seems perfectly reasonable and logical for the legislature, in order to provide for judicial supervision and control and for the sake of uniformity of procedure, to require a seizure warrant as a prerequisite to the proceedings to condemn gambling paraphernalia seized originally without a warrant under § 53-279 and its predecessors. It is conceded that no warrant under § 53-279 was obtained in the case at bar. Even though all procedural requirements of § 54-35 were complied with, the obtaining of a seizure warrant as provided in § 53-279 is a prerequisite to this in rem proceeding under § 54-35. The language of both of these sections is so unmistakably clear and unequivocal that no other conclusion can be reached.

The case of *State* v. *Verrilli*, 132 Conn. 46, relied on by the state in support of its claim that a seizure warrant is not required, is not in point. In that case

the sole question was whether money was within the purview of the language "such . . . other device" in the seizure clause of § 740g of the 1943 Supplement —now § 53-279. The court held that money was included therein. The defendant in that case was arrested and money in his pockets was seized without a warrant. Although it does not appear from the opinion that a seizure warrant was obtained, the records and briefs reveal that a seizure warrant was obtained for the money previously seized without a warrant. A-210 Rec. & Briefs 700.

The state further argues that inasmuch as gambling since the earliest times has been treated by Connecticut as against public policy, the articles used in gambling are per se a nuisance, the state has an inherent right to condemn property used illegally, and compliance with § 53-279 is therefore not necessary. In support of this claim the state has cited a number of cases, all from other states. There is a paucity of cases, in the Connecticut reports, dealing with condemnation of gambling paraphernalia. In *State* v. *Verrilli,* supra, and *State* v. *A Table,* 16 Conn. Sup. 302, while the seizures were made without warrants, seizure warrants were subsequently obtained. *Ely* v. *Bugbee,* 90 Conn. 584, involved the fishing statutes which authorized the confiscation upon judicial process of fishing implements illegally used, there being no requirement for a warrant. Special statutory proceedings for disposal of liquors seized in connection with criminal proceedings for violations of the liquor laws were involved in *Alcorn* v. *Alexandrovicz,* 112 Conn. 618, 623; *Pickett* v. *Marcucci's Liguors,* 112 Conn. 169, 179, and *State* v. *Brennan's Liquors,* 25 Conn. 278, 285. In all these cases, the specific statutory provisions relating to condemnation, forfeiture or confiscation of the seized property were observed. The cases from other jurisdictions relied on by the state in support

of its claim that the state has the inherent right to condemn the instrumentalities used in gambling do not support its contention. It is not necessary to discuss each of those cases; suffice it to say that while they state the general rules at common law or by statute that gambling devices are public nuisances, the abatement thereof by summary destruction or otherwise was allowed under specific statutes specifying the procedures therefor. It would seem that gambling instruments are not nuisances in Connecticut by virtue of the common law but may become nuisances upon judicial adjudication under the provisions of § 54-35. In that event, this statute provides the procedures for abatement thereof. However, by its very terms it applies only when the required warrant under § 53-279 has been issued. Condemnation of gambling devices amounts to a forfeiture. It is well settled that forfeitures are not favored. *United States* v. *One Ford Coach,* 307 U.S. 219, 226. The statute on which a forfeiture is based must be strictly construed.

We conclude that there is no inherent right, irrespective of statute, in the state to condemn gambling devices, but it must follow the procedure provided by statute. As the state failed to do so, the judgment of the trial court in favor of the defendant must be affirmed.

There is no error.

In this opinion DEARINGTON, J., concurred; JACOBS, J., concurred in the result.