STATE OF CONNECTICUT *v.* ONE 1977 BUICK AUTOMOBILE (12485)

PETERS, C. J., HEALEY, SHEA, DANNEHY and SANTANIELLO, Js.

Argued March 14—decision released June 18, 1985

*Timothy C. Moynahan,* for the appellants (owner and operator).

*Peter D. Markle,* assistant state's attorney, for the appellee (state).

SHEA, J. This is an appeal from a judgment declaring a 1977 Buick automobile to be a nuisance and ordering the automobile forfeited to the state. The appellants are the owner of the automobile, Joyce DeLorenzo, and the person whose alleged criminal use of the automobile led to its adjudication as a nuisance, William McNellis. The appellants claim that the judgment of

forfeiture must be overturned because (1) a statutory prerequisite to forfeiture, seizure pursuant to a search warrant, was not met, (2) McNellis was unlawfully excluded from the in rem proceeding, (3) evidence obtained through an unlawful search was admitted, (4) the evidence did not support the judgment, (5) forfeiture would unduly punish the innocent owner of the vehicle, and (6) the acquittal of McNellis on related criminal charges should have barred the subsequent forfeiture action. We find no error and affirm the forfeiture order.

The trial court could reasonably have found the following facts from the conflicting evidence. As a result of a prior investigation, a warrant was issued on January 29, 1982, for the arrest of William McNellis on charges of gambling activity. On February 24, 1982, Trooper Jules Lloyd, a member of the state police then assigned to the Statewide Organized Crime Investigative Task Force, recognized McNellis as the driver of a 1977 Buick automobile traveling on Springdale Street in Meriden. There was a female passenger in the automobile with McNellis. The trooper was aware of the outstanding warrant for the arrest of McNellis and caused the Buick to be pulled over to the side of the road. Lloyd radioed his location and situation to headquarters in Meriden, and other troopers were dispatched with a copy of the arrest warrant for McNellis. Meanwhile, Lloyd approached the Buick, noticing as he did so that McNellis was partially turned away from the driver's side window of the vehicle, concealing his activities from the trooper. Lloyd informed McNellis that he had a warrant for McNellis' arrest and requested that McNellis step out of the Buick. McNellis asked to see the warrant. Lloyd repeated that he had a warrant and again asked McNellis to get out of the vehicle. At this point, McNellis, while still in the automobile, ripped up a piece of white paper and put the

pieces in the Buick's glove compartment, together with what looked like a bank book. McNellis then turned to his companion, Robin McClellan, and stated either "I don't want them to fool with my books" or "I don't want them to get my books . . . ." McNellis slammed the glove compartment door shut. McNellis eventually exited the vehicle and was arrested by Lloyd. The Buick was towed to the state police office in Meriden.

Lloyd then prepared an application for a warrant to search the Buick for gambling records. The warrant was issued, and the trooper retrieved the torn pieces of paper, and also a bank book and an address book, from the Buick's glove compartment. While a summons to the in rem proceeding was served upon both DeLorenzo and McNellis, only DeLorenzo, the owner of the car, was made a party defendant in the forfeiture action. At the trial, Trooper John Drescher testified that the torn pieces of paper found in the glove compartment constituted "a tally sheet, a record of amount(s) of money owed in connection with previously placed wagers." The trial court concluded that the Buick had been used "to store or conceal gambling records" as defined in General Statutes § 53-278a (5), which constituted criminal conduct under then General Statutes § 53-278c (e) (now § 53-278c [f]). The court adjudicated the Buick a nuisance and ordered it forfeited to the state pursuant to General Statutes § 54-33g (c). McNellis was eventually acquitted of the crimes for which he was arrested on February 24, 1982.

I

We first address the appellants' claim that the forfeiture order was erroneous because a statutory prerequisite to forfeiture under General Statutes § 54-33g (c), seizure pursuant to a search warrant, was not met. In this case, the car was seized when the police took McNellis into custody on an arrest warrant. After the

Buick had been towed to the Meriden police station, a search and seizure warrant for gambling records was obtained, and the torn slips of paper were retrieved from the glove compartment. The in rem proceeding was then instituted. The appellants argue that, at the time of the proceeding below, General Statutes § 54-33g provided for forfeiture only of property seized "pursuant to subdivision (1) of subsection (b) of section 54-33a."[1] General Statutes § 54-33a (b) (1) provides that

---

[1] When the forfeiture proceeding was instituted, General Statutes § 54-33g provided: "Sec. 54-33g. SUMMONS TO OWNER ON SEIZURE OF PROPERTY. IN REM ACTION FOR ADJUDICATION AS NUISANCE. DISPOSITION OF PROPERTY. (a) When, pursuant to subdivision (1) of subsection (b) of section 54-33a, any property has been seized, which the state claims to be a nuisance and desires to have destroyed or disposed of in accordance with the provisions of this section, the judge or court issuing the warrant shall, within ten days after such seizure, cause to be left with the owner of, and with any person claiming of record a bona fide mortgage, assignment of lease or rent, lien or security interest in, the property so seized, or at his usual place of abode, if he is known, or, if unknown, at the place where the property was seized, a summons notifying the owner and any such other person claiming such interest and all others whom it may concern to appear before such judge or court, at a place and time named in such notice, which shall be not less than six nor more than twelve days after the service thereof, then and there to show cause why such property should not be adjudged a nuisance and ordered to be destroyed or otherwise disposed of as herein provided. Such summons may be signed by a clerk of the court or his assistant and service may be made by a local or state police officer. It shall describe such property with reasonable certainty and state when and where and why the same was seized.

"(b) If the owner of such property or any person claiming any interest in the same appears, he shall be made a party defendant in such case. Any state's attorney or assistant state's attorney may appear and prosecute such complaint.

"(c) If the judge or court finds the allegations made in such complaint to be true and that the property has been possessed, controlled or designed for use, or is or has been or is intended to be used, with intent to violate or in violation of any of the criminal laws of this state, he shall render judgment that such property is a nuisance and order the same to be destroyed or disposed of to a charitable or educational institution or to a governmental agency or institution provided, if any such property is subject to a bona fide mortgage, assignment of lease or rent, lien or security interest, such property shall not be so destroyed or disposed of in violation of the rights of the holder of such interest. When any money or valuable prize has been

a judge of the Superior Court may issue a warrant permitting the search for and seizure of listed property that had allegedly been "possessed, controlled, designed or intended for use or which is or has been used or which may be used as the means of committing any criminal offense . . . ."[2] While the torn tally sheet was recovered pursuant to a warrant authorizing the search of the 1977 Buick, the warrant listed as its subject gambling records, not the vehicle itself,

---

seized upon such warrant and condemned under the provisions of this section, such money or valuable prize shall become the property of the state, provided any such property, which at the time of such order is subject to a bona fide mortgage, assignment of lease or rent, lien or security interest shall remain subject to such mortgage, assignment of lease or rent, lien or security interest. When any property or valuable prize has been declared a nuisance and condemned under this section, the court may also order that such property be sold by sale at public auction in which case the proceeds shall become the property of the state; provided, any person who has a bona fide mortgage, assignment of lease or rent, lien or security interest shall have the same right to the proceeds as he had in the property prior to sale. Final destruction or disposal of such property shall not be made until any criminal trial in which such property might be used as evidence has been completed.

"(d) If the judge or court finds the allegations not to be true or that the property has not been kept with intent to violate or in violation of the criminal laws of this state or that it is the property of a person not a defendant, he shall order the property returned to the owner forthwith and the party in possession of such property pending such determination shall be responsible and personally liable for such property from the time of seizure and shall immediately comply with such order.

"(e) Failure of the state to proceed against such property in accordance with the provisions of this section shall not prevent the use of such property as evidence in any criminal trial."

[2] When the forfeiture proceeding was instituted, General Statutes § 54-33a (b) provided in part:

"Upon complaint on oath of any state's attorney or assistant state's attorney or by any two credible persons, to any judge of the superior court, that he or they have probable cause to believe that any property (1) possessed, controlled, designed or intended for use or which is or has been used or which may be used as the means of committing any criminal offense . . . is within or upon any place, thing or person, such judge . . . may issue a warrant commanding a proper officer to enter into or upon such place or thing, search the same or the person and take into his custody all such property named in the warrant."

which was already in police custody. The appellants claim that it was necessary for the police to seize the vehicle pursuant to a search warrant before attempting to confiscate it.

The case law of this state provides some support for the appellants' contention. In *State* v. *Sabia,* 1 Conn. App. 315, 471 A.2d 673 (1984), the court concluded that General Statutes § 54-33g (c), "read strictly, as it must be, requires that the issuance of the warrant, pursuant to which the property sought to be confiscated is seized, precede the seizure and that the seizure take place pursuant to that warrant. See *State* v. *Bucchieri,* [176 Conn. 339, 348, 407 A.2d 990 (1978)]; *State* v. *Anonymous (1980–8),* 36 Conn. Sup. 551, 559, 421 A.2d 867 (1980)." *State* v. *Sabia,* supra, 318; see also *State* v. *Rosarbo,* 2 Conn. Cir. Ct. 399, 404–407, 199 A.2d 575 (1963). Similarly, in *State* v. *Pierro,* 192 Conn. 98, 103 n.5, 470 A.2d 240 (1984), we noted that "§ 54-33g relates only to property which has been seized pursuant to a search warrant issued under General Statutes § 54-33a (b) (1) . . . . " The 1977 Buick at issue in this case was initially seized incident to an arrest, rather than pursuant to a warrant, and the warrant that eventually did issue called only for the search of the vehicle and the seizure of any gambling records found therein, not the seizure of the car itself. We must conclude that the appellants are correct in their assertion that the provision of § 54-33g (c) creating a preliminary requirement of seizure pursuant to § 54-33a (b) (1) has not been complied with.

This does not end our inquiry, however. It would make little sense if property lawfully seized without a warrant[3] could never be forfeited simply because some

---

[3] The appellants have made no challenge to the legality of the arrest, or the ensuing search, on any grounds; nor would the fact that the officer who arrested McNellis did not have on his person a copy of the arrest warrant

alternative legal method of seizure was also available, and the legislature has mandated no such result. In *State* v. *Anonymous (1980–8),* supra, 559–60, the court noted that General Statutes § 54-36a, which applies to "property seized in connection with a criminal arrest" in addition to property "seized pursuant to a search warrant," provides that seized property must be returned to its owner "[*u*]*nless* such seized property is adjudicated a nuisance in accordance with section 54-33g, or unless the court finds that such property shall be forfeited or is contraband or a controlled substance . . . ." (Emphasis added.) General Statutes (Rev. to 1979) § 54-36a (c). While this provision is not without ambiguity, we read it as authorizing the state to seek adjudication as a nuisance, and thereupon forfeiture, of all "such seized property," that phrase encompassing "property seized in connection with a criminal arrest" as well as that "seized pursuant to a search warrant." Thus General Statutes § 54-36a (c) authorizes the forfeiture in this case and instructs the courts to follow the procedures of § 54-33g in adjudicating it. This conclusion is reinforced by the legislative history accompanying a 1984 amendment to § 54-33g explicitly including in that statute property "seized as a result of a search incident to an arrest, a warrantless arrest or a search warrant . . . ." Public Acts 1984, No. 84-540, § 4. In explaining the need for this seeming expansion of the scope of § 54-33g to nonwarrant situations, the sponsor of the amendment appeared to be concerned about the effect of *State* v. *Sabia,* supra, when he referred to "a decision . . . which *changes* the process of notification for the defendant and lays out certain procedures which must be followed." (Emphasis added.) 27 H. R. Proc., Pt. 15, 1984 Sess., p. 5359 (remarks of Rep. Alfred J. Onorato). The

support such a challenge. See *State* v. *Delgado,* 161 Conn. 536, 543–46, 290 A.2d 388, remanded for resentencing, 408 U.S. 940, 92 S. Ct. 2879, 33 L. Ed. 2d 764 (1971).

effect of the *Sabia* opinion, which limited forfeitures under § 54-33g (c) to property seized under a search warrant, was overturned by the amendment, which expressly made the prescribed forfeiture procedure applicable to property "seized as a result of a search incident to an arrest." We view this recent enactment as a legislative declaration of what § 54-33g (c), when read in conjunction with § 54-36a (c), was originally intended to mean. See *Circle Lanes of Fairfield, Inc.* v. *Fay*, 195 Conn. 534, 540–41, 489 A.2d 363 (1985); *Neyland* v. *Board of Education*, 195 Conn. 174, 180, 487 A.2d 181 (1985); *Lee* v. *Board of Education*, 181 Conn. 69, 74–76, 434 A.2d 333 (1980). Thus we conclude that this forfeiture action was authorized by General Statutes § 54-36a (c), and the trial court properly proceeded pursuant to the procedural directions of § 54-33g (c).[4]

## II

The appellants also claim that the trial court erred in refusing to make McNellis, the driver of the 1977 Buick at the time of its seizure, a party to the forfeiture action and in excluding him from the courtroom during the testimony of other witnesses. It is claimed that these actions violated General Statutes § 54-33g (b)

---

[4] Our conclusion that the statutes authorize the forfeiture in this instance is further fortified by General Statutes § 53-278c (c), upon which the state appeared to rely at the forfeiture proceeding as an alternative to forfeiture pursuant to § 54-33g. General Statutes § 53-278c (c) provides that "[a]ll furnishings, fixtures, equipment and stock, including without limitation . . . equipment and stock for . . . transporting [and] safekeeping . . . used in connection with professional gambling . . . shall be subject to seizure, immediately upon detection, by any peace officer, and shall, unless good cause is shown to the contrary by the owner, be ordered by the court to be destroyed or disposed of . . . ." The requirements of § 53-278c (c) are less stringent than those of § 54-33g, and might very well support the forfeiture in this instance. Because we have interpreted §§ 54-36a and 54-33g as authorizing the forfeiture of the res at issue, we have no need to consider the specific application of § 53-278c (c) to the facts of this case, an undertaking that was also avoided by the trial court.

and the due process guarantees of the fifth and fourteenth amendments to the United States constitution.

The appellants have failed to file a transcript of the proceedings before the trial court, *Ramsey, J.,* in which the question of McNellis' status was resolved.[5] At the subsequent hearings, the court, *Glass, J.,* specifically stated that it would not go behind the previous ruling, and the issue was not discussed during those hearings. The appellants have placed before us only the transcripts of the later hearings. Thus we do not know what issues were presented to Judge Ramsey or the basis for his ruling. "The significant gap in the record . . . limits our review and presents obstacles to reviewing the [appellants'] claim of error on this appeal. See *Steve Viglione Sheet Metal Co.* v. *Sakonchick,* 190 Conn. 707, 713–14, 462 A.2d 1037 (1983); *H. B. Sanson, Inc.* v. *Tax Commissioner,* 187 Conn. 581, 586, 447 A.2d 12 (1982). It is the appellant[s'] burden to ensure that we are provided with an adequate appellate record to support [their] claims of error. See *DeMilo* v. *West Haven,* 189 Conn. 671, 681, 458 A.2d 362 (1983). It is important to recognize that a claim of error cannot be predicated on an assumption that the trial court acted incorrectly. *Long* v. *Loughlin,* 171 Conn. 291, 292–93, 370 A.2d 925 (1976); *Giamattei* v. *DiCerbo,* 135 Conn. 159, 162, 62 A.2d 519 (1948); Maltbie, [Conn. App. Proc.] § 311.

---

[5] The in rem action was initially filed in the judicial district of New Haven at Meriden because the arrest of McNellis and seizure of the 1977 Buick took place there. On March 12, 1982, counsel appeared in response to the summons at geographical area number seven in Meriden before *Ramsey, J.,* who determined that the proper venue was Waterbury, the site of McNellis' alleged gambling activities and the source of the arrest warrant executed in Meriden. See General Statutes § 54-33g (c). The action was transferred to the Waterbury judicial district, where it proceeded before the court, *Glass, J.,* on April 2, 1982, and certain dates thereafter. It appears that before ordering the change of venue, Judge Ramsey reached the question of McNellis' status that is now raised as error on appeal. The appellants have filed transcripts of only the April hearings before Judge Glass.

Rather, it must be assumed that the trial court acted properly. *Jacobsen* v. *Jacobsen,* 177 Conn. 259, 263, 413 A.2d 854 (1979); *Giamattei* v. *DiCerbo,* supra; Maltbie, supra." *Barra* v. *Ridgefield Card & Gift Gallery, Ltd.,* 194 Conn. 400, 407–408, 480 A.2d 552 (1984). On the record before us, we can perceive nothing clearly erroneous in the trial court's ruling. Practice Book § 3060D. The fact that a summons was sent to McNellis pursuant to General Statutes § 54-33a would not require that he be made a party. General Statutes § 54-33g (b), which limits the parties in an in rem action to those with a financial "interest" in the property to be forfeited, is less broad than the notice provision of § 54-33g (a), which refers to those included in § 54-33g (b) and additionally "all others whom [the forfeiture action] may concern." McNellis expressly disclaimed any of the financial interests that would support party status at the subsequent hearings before Judge Glass. His attempt on appeal to broaden the basis for his attack on the ruling cannot be countenanced given his failure to present this court with an adequate record to review the claim. Practice Book §§ 3060D; 3060V.

Our decision to uphold the refusal of the trial court to make McNellis a party in the in rem action also disposes of the appellants' claim of unlawful sequestration. McNellis, not being a party, has no standing to raise this claim.[6] And DeLorenzo, the owner of the vehicle, is likewise barred by her attorney's failure to object to the sequestration order. Indeed, the order was prompted by DeLorenzo's attorney's request that all state's witnesses be sequestered, which elicited a counter request of the same nature from the state's attor-

---

[6] The continued reference to the "appellants" in the plural throughout this opinion is employed only for the sake of continuity and is not meant to indicate in any manner that McNellis, who was not properly a party to this proceeding, had any standing to contest anything but the determination of his party status.

ney to which no objection was offered. Thus the sequestration issue cannot properly be raised before this court by the appellants.

## III

The appellants also contend that the torn papers recovered from the 1977 Buick's glove compartment were seized pursuant to a defective warrant, rendering them inadmissible in the in rem proceeding. The appellants made no motion to suppress the evidence in this case, nor did they take exception when their objection to its admission was overruled. "Since the [appellants] took no exception to the ruling, as required by Practice Book § 288, [they are] not entitled to appellate review of this ruling." *State* v. *Anonymous (83-FG)*, 190 Conn. 715, 730, 463 A.2d 533 (1983); *Kavanaugh* v. *Lewis*, 187 Conn. 534, 535–36, 447 A.2d 6 (1982); *Williams* v. *Vista Vestra, Inc.*, 178 Conn. 323, 331, 422 A.2d 274 (1979). The appellants make no claim that this issue arises under such exceptional circumstances as to justify appellate review despite the failure properly to preserve it. See *State* v. *Evans*, 165 Conn. 61, 67, 327 A.2d 576 (1973). Therefore we decline to address the merits of the claim. *State* v. *Miller*, 186 Conn. 654, 672, 443 A.2d 906 (1982); Practice Book § 3063.

## IV

The appellants further argue that the evidence presented in the in rem proceeding was insufficient to support the judgment. Citing two federal cases, the appellants assert that a "substantial connection" must exist between the criminal activity and the property to be forfeited when the property is only "derivative contraband." Our forfeiture statute contains no such requirement.[7] General Statutes § 54-33g (c), under

---

[7] Indeed, even an extremely broad reading of the federal cases cited by the appellants hardly supports the proposition for which the cases are cited. In *United States* v. *One 1974 Cadillac Eldorado Sedan*, 548 F.2d 421, 423

which forfeitures pursuant to § 54-36a (c) are directed to proceed, provides that if "property has been possessed, controlled or designed for use, or is or has been or is intended to be used, with intent to violate or in violation of any of the criminal laws of this state," it shall be a nuisance subject to forfeiture. The full range of conduct implicated by this language is not before us. For purposes of this case, we need only decide whether one who conceals gambling records in an automobile and thereby possesses, stores or transports them in violation of General Statutes (Rev. to 1983) § 53-278c (e) has used that vehicle "in violation of any of the criminal laws of this state . . . . " In this regard, *State* v. *Connelly,* 194 Conn. 589, 483 A.2d 1085 (1984), is instructive. In *Connelly,* we upheld an adjudication of nuisance when a small quantity of cocaine was found hidden in a door compartment of a car. General Statutes (Rev. to 1981) § 19-481 (a) made it a crime to possess or control "any quantity of any narcotic substance . . . . " We concluded that the use of the car to store the contraband was a use "in violation of . . . the laws of this state," rendering the vehicle subject to forfeiture under General Statutes § 54-33g (c). The same reasoning applies here. General Statutes (Rev. to 1983) § 53-278c (e) provides that "[a]ny person who knowingly . . . possesses, stores or transports *any* gambling record" has committed a crime. (Emphasis

(2d Cir. 1977), the court upheld the forfeiture of an automobile that had been used to transport two drug dealers to a location where they negotiated a sale of drugs that did not even take place at that time. The court specifically stated that it was looking for either a "direct *or indirect* relationship" (emphasis added) between the drug charges and the vehicle, a relationship that could be satisfied by "facilitation *in any manner"* (emphasis in original) of the drug deal by the automobile. The second case, *United States* v. *One 1974 Cadillac Eldorado,* 575 F.2d 344 (2d Cir. 1978), relied heavily on the first, and the forfeiture was overturned only because there was literally no credible connection between the drug sale and the automobile, which appeared momentarily at the site of the sale with the dealer's family inside. Neither court made reference to "derivative contraband" in either case, nor was the term "substantial connection" employed.

added.) If the evidence was sufficient to establish that the torn pieces of paper constituted a gambling record, the statute supports the forfeiture.

The adequacy of the expert testimony relating to that issue is the second point of attack by the appellants. Without questioning the qualifications of Trooper Drescher as an expert, the appellants contend that there was an insufficient factual foundation for his conclusion that the torn pieces of paper represented "a tally sheet." We agree that the facts upon which an expert opinion is based are important in considering the relevance, and hence the weight, as well as the admissibility of the testimony. See *Going* v. *Pagani*, 172 Conn. 29, 34, 372 A.2d 516 (1976). Nevertheless, we do not find the foundation inadequate in this case. Drescher based his testimony on his direct observation of the slip of paper, together with his expertise, which is not challenged, and certain information he had previously obtained from a wiretap investigation of illegal gambling in the Waterbury area. The appellants claim that because the wiretap information had been obtained two months before the seizure of the Buick and did not permit the trooper to decipher fully the writing on the paper, the trooper's testimony had an insufficient factual basis. We do not agree. We conclude that the two month delay did not require a finding of changed circumstances such as to render the wiretap information too attenuated from the events of the day of the seizure to have probative value. Thus we do not agree "that the uncertainties in the essential facts on which the witness' opinion was predicated were such as to make an opinion based on them without substantial value." *Going* v. *Pagani*, supra, 35. We therefore find the testimony adequate to support the trial court's conclusion.

The appellants' brief also refers to several alleged misstatements of the evidence in the trial court's mem-

orandum. It is not clear that any of these comments exceeded the authority of the trial court to interpret the evidence. In any event, we consider them too trivial to warrant discussion and not material to the outcome. Cf. *Berndston* v. *Annino,* 177 Conn. 41, 45, 411 A.2d 36 (1979). The evidence adequately supported the trial court's conclusion that the Buick was a nuisance.

## V

The appellants argue in addition that the Buick should not be forfeited because forfeiture would unduly punish the innocent owner of the vehicle. This argument misapprehends the function of our forfeiture laws. "This statute is not a criminal statute, but provides for a civil action *in rem* for the condemnation and forfeiture of the car which was used in violation of the law. *Pickett, Pros. Atty.* v. *Marcucci's Liquors,* [112 Conn. 169, 151 A. 526 (1930)]. In such an action the guilt or innocence of the owner of the vehicle is not in issue. The only issue is whether the vehicle was used in violation of law. This follows from the nature of the action which is one against the *res,* an action *in rem* . . . . The effective enforcement of the law may require legislation making property used for illegal purposes subject to forfeiture. When the statute provides for such forfeiture in unequivocal language, making no exceptions in favor of the claims of innocent owners . . . it must be assumed that the legislature deemed that such enactment was necessary effectively to curb violation of the law, and we cannot impute to it an intent to make the statute less drastic and effective by adopting a strained construction of the language used, and reading into it an exception which does not there appear. The forfeiture is the owner's misfortune much as if the property had been destroyed, and he is remitted to his remedy against the person to whom he entrusted the property." *Alcorn, State's Attorney* v. *Alexandrovicz,* 112 Conn. 618, 623–24, 153 A. 786

(1931); *State* v. *Connelly,* supra, 592. Any hardship suffered by an innocent owner is incidental to the state's valid exercise of its sovereign authority to protect its citizens through means reasonably calculated to reduce the violation of the criminal laws.

Nevertheless, as we noted in *State* v. *Connelly,* supra, there may be some instances in which forfeiture would violate the due process rights of an innocent owner. Quoting *Calero-Toledo* v. *Pearson Yacht Leasing Co.,* 416 U.S. 663, 689, 94 S. Ct. 2080, 40 L. Ed. 2d 452 (1974), we noted that "it would be difficult to reject the constitutional claim of an owner whose property subjected to forfeiture had been taken from him without his privity or consent. . . . Similarly, the same might be said of an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property. . . . " *State* v. *Connelly,* supra, 593 n.4. In this case, the trial court specifically concluded that no evidence was presented that McNellis had the automobile without the owner's consent or knowledge, and found that he had used the Buick on other occasions. In addition, no evidence was presented by the owner that she was unaware of McNellis' criminal activities involving the use of her car. Thus the record does not support the contention that the innocence of the owner should bar the forfeiture of the automobile.

## VI

The appellants' final claim is somewhat difficult to follow. As we understand it, the appellants claim that the acquittal of McNellis of the gambling charges recited in the arrest warrant relating to his criminal activities prior to February 24, 1982, the day on which the seizure of the Buick took place, should somehow prevent the forfeiture of the vehicle at issue here. The

appellants are far off base. The fact that McNellis was acquitted of those charges, based upon events that occurred long before that date, even though they related to gambling, is completely irrelevant to the issues presented by the in rem action which related wholly to the events of that date, and has no preclusive effect on the adjudication of nuisance.[8]

There is no error.

In this opinion the other judges concurred.

---

[8] We note that the United States Supreme Court has recently held that even an acquittal of criminal charges upon which the government relies in a forfeiture action would not bar the forfeiture of the property in a subsequent civil proceeding. *United States* v. *One Assortment of 89 Firearms,* 465 U.S. 354, 361–62, 104 S. Ct. 1099, 79 L. Ed. 2d 361 (1984).