WARREN E. HOWLAND *v.* LEON R. SCHWEIR ET AL.
(4061)

DUPONT, C. J., BORDEN and SPALLONE, Js.

Argued March 11—decision released June 17, 1986

*Joel E. Janenda,* for the appellant (plaintiff).

*Hagop H. Jamgochian,* with whom, on the brief, was *Charles Stroh,* for the appellees (defendants).

BORDEN, J. The plaintiff appeals from the judgment of the court rejecting his claim for a real estate commission from the defendants. The issues involve the scope and meaning of General Statutes § 20-325a (b). We find no error.

The trial court's findings and the undisputed documents establish the following facts: On October 10, 1972, the named defendant, Leon R. Schweir, and the plaintiff, a licensed real estate agent, signed a listing agreement on a form furnished by the plaintiff for the sale of certain property. The property consisted of approximately sixty acres in South Windsor and Manchester. The agreement gave the plaintiff the exclusive right to sell the property, for a period of thirty days, at a commission of 10 percent of the selling price of $3800 per acre. It also provided that, during its period, Leon R. Schweir would forward to the plaintiff all inquiries about buying the property. The court further found that this listing agreement terminated on November 10, 1972, that it did not contain a provision for any extension, and that it was not modified. The court also found that the plaintiff did not, within the thirty day time period provided by the agreement, accomplish any of the acts necessary for a broker to earn a commission. The other two defendants, Eileen Schweir and Edward Schweir, who did not sign this agreement, owned portions of the property described in the agreement.

On December 5, 1972, Eileen Schweir and Map Associates of M. and S.W. (Map), a New York partnership, entered into an agreement giving Map an option to buy from Eileen Schweir certain properties in Manchester for $76,000. The option was for one year and was renewable by Map for an additional year, or until December 5, 1974. This agreement acknowledged the plaintiff as the broker and stated that he would be entitled to a commission if the option were exercised.

On the same date, Albert Schweir, who was not involved in this case, Edward Schweir and Leon R. Schweir entered into an option agreement with Map for the sale of property in Manchester for $152,000, which agreement was similar to that between Eileen Schweir and Map. This agreement also acknowledged the plaintiff as the broker and stated that he would be entitled to a commission if the option were exercised. It also was for a period of one year, renewable for an additional year.

On January 29, 1973, Leon R. Schweir and Map entered into an essentially similar option agreement for the sale of property in Manchester for $57,000. This agreement was essentially the same as the two entered into on December 5, 1972, and contained the same terms regarding its time period and the plaintiff's right to a commission if the option were exercised.

Each of these three option agreements referred to the other two as granting options of adjoining lands. Each option was for the sale of acreage at $3800 per acre and each was eventually extended for an additional year in accordance with its terms.

The trial court further found that Map was the group with whom the plaintiff dealt from the beginning, and that he continued to be involved with Map and the

Schweirs after 1972. Map and Leon R. Schweir continued to deal with each other through the plaintiff into 1980.

On January 1, 1978, each of the three defendants entered into a new option agreement with Map. These agreements, which eliminated the South Windsor property, were for a total of 41.52 acres in Manchester at a price of $4000 per acre. Each agreement was for one year, renewable for an additional year, and each was extended to January 1, 1981. The agreements contained identical paragraphs in which the parties represented that no broker was instrumental in effecting the transaction, and in which the parties agreed to hold each other harmless with respect to any broker's commission. Each seller specifically agreed to indemnify Map against any claim for commission advanced by the plaintiff. The plaintiff knew nothing about these agreements.[1]

On December 1, 1981, the three defendants sold to Map the same property covered by the January 1, 1978 option agreements at the prices set by those agreements. The plaintiff claimed at trial that he was entitled to commissions on these sales. The trial court held that, pursuant to General Statutes § 20-325a, the listing agreement of October 10, 1972, did not support the plaintiff's right to a commission, and rendered judgment for the defendants. This appeal followed.

The plaintiff claims that any deficiencies in the October 10, 1972 listing agreement were cured by the option

---

[1] Despite these agreements and the brokerage disclaimer in each, on February 21, 1978, Leon R. Schweir entered into another listing agreement with the plaintiff which was for a two year period. This agreement covered seventy-two acres located in South Windsor and Manchester, to be sold to Map. The trial court concluded that this agreement did not meet the requirements of General Statutes § 20-325a. In this appeal, the plaintiff does not challenge this conclusion. We, therefore, do not consider whether this conclusion was correct.

agreements of December 5, 1972, and January 29, 1973,[2] and that he is entitled to a commission on the sale of the properties in 1981. We disagree.

The plaintiff's argument founders on a series of critical factual findings regarding the October 10, 1972 listing agreement. Those findings, which the plaintiff does not challenge as clearly erroneous, are that the listing agreement terminated on November 10, 1972, and that he did not, within that time period, perform the acts necessary to earn a commission. Thus, even if we assume without deciding that the subsequent 1972 and 1973 option agreements filled any gaps in that listing agreement, the plaintiff did not establish his right to a commission pursuant to that agreement.

To recover a commission, a broker must ordinarily show (1) that he has produced a customer ready, willing and able to buy on terms acceptable to the seller, or (2) that he has brought the buyer and seller to an enforceable agreement. *Revere Real Estate, Inc.* v. *Cerato,* 186 Conn. 74, 77–78, 438 A.2d 1202 (1982). He must also show that he has complied with General Statutes § 20-325a. *Thornton Real Estate, Inc.* v. *Lobdell,* 184 Conn. 228, 230, 439 A.2d 946 (1981).

General Statutes § 20-325a (b) provides in pertinent part that no licensed real estate broker "shall commence or begin any action in respect of any acts done or services rendered . . . unless such acts or services were rendered pursuant to a contract or authorization from the person for whom such acts were done or ser-

---

[2] Our analysis of the case is hampered by the failure of the plaintiff to comply with Practice Book § 3060F (a), which requires a "concise statement setting forth, in separately numbered paragraphs, without detail or discussion, the principal issue or issues involved in the appeal . . . ." and with Practice Book § 3060F (d), which requires that the "argument [be] divided under appropriate headings into as many parts as there are points to be presented . . . ." Thus, we have had to glean from the plaintiff's narrative brief the specific claims of error of the trial court.

vices rendered. To satisfy the requirements of this subsection any such contract or authorization shall . . . (4) contain the conditions of such contract or authorization . . . . " This statute has been viewed by our courts as being mandatory and subject to strict construction. See, e.g., *Thornton Real Estate, Inc.* v. *Lobdell,* supra (signature by owner's agent not in compliance with statute as then worded); *Hossan* v. *Hudiakoff,* 178 Conn. 381, 383, 423 A.2d 108 (1979) (lack of address of broker); *Arruda Realty, Inc.* v. *Doyon,* 35 Conn. Sup. 617, 620, 401 A.2d 625 (1978) (lack of address of owner). "A broker who does not follow the mandate of the statute does so at his peril." *Thornton Real Estate, Inc.* v. *Lobdell,* supra, 230–31.

The statute requires that the "acts or services" which are the foundation of the plaintiff's claim for commission be "rendered pursuant to" a listing agreement which complied with the statute. General Statutes § 20-325a (b). " ' "Pursuant to" is defined as "acting or done in consequence or in prosecution (of anything); hence, agreeable; conformable; following; according." ' " *State* v. *Sabia,* 1 Conn. App. 315, 319, 471 A.2d 673 (1984). See also *State* v. *One 1977 Buick Automobile,* 196 Conn. 471, 477, 493 A.2d 874 (1985). One of the "conditions of [the 1972 listing] contract"; General Statutes § 20-325a (b) (4); was that it was for a thirty day period. We see no reason why the same strictness with which General Statutes § 20-325a (b) has been applied to other parts of listing agreements should not apply to the time period of this listing agreement. Indeed, such a reading of the statute and this agreement is consistent with the general law regarding a broker's right to a commission, which has long recognized that a "listing contract may . . . make the broker's right to a commission dependent upon specific conditions . . . . " *Revere Real Estate, Inc.* v. *Cerato,* supra, 78.

Thus, in order for the plaintiff to prevail under the October 10, 1972 listing agreement, he was required to prove, not only that the agreement complied with General Statutes § 20-325a (b), but also that his services were rendered pursuant to the terms of that agreement. He was, therefore, required to establish that, between October 10, 1972, and November 10, 1972, he either produced a ready, willing and able buyer, or brought the buyer and seller to an enforceable agreement.[3] The trial court specifically found that he did neither. This finding is fatal to his claim. Any services he may have rendered after November 10, 1972, were performed without the benefit of a proper listing agreement and were thus performed at his peril.

There is no error.

In this opinion the other judges concurred.

---

[3] The plaintiff does not claim that, during the thirty day period of the 1972 agreement, Map approached Leon R. Schweir about buying the property. Thus, he does not claim any violation by Leon R. Schweir of the exclusive sales aspect of the listing agreement. See *John F. Epina Realty, Inc.* v. *Space Realty, Inc.,* 194 Conn. 71, 76 n.4, 480 A.2d 499 (1984).