Scileppi, J.
This case presents cross appeals from an order of the Appellate Division, First Department, which modified, on the law and the facts and in the exercise of discretion, a determination of the New York State Liquor Authority canceling petitioner’s restaurant liquor license with a $500 bond claim, by reducing the penalty to 15 days’ suspension and a bond forfeiture of $150.
It was found, after a hearing, that an employee of the petitioner had enticed an 8-year-old boy to accompany him to a second-floor bathroom in the licensed premises and had acted with him in a lewd and indecent manner, and that the charge of violating subdivision 6 of section 106 of the Alcoholic Sever- *236 age Control Law in that the licensed premises were suffered or permitted to become disorderly was sustained. On appeal, the Appellate Division unanimously affirmed, but modified the penalty in light of the licensee’s long record of compliance with all regulations.
The petitioner argues, as it did below, that it cannot be said to have suffered or permitted its premises to become disorderly by the commission of a single, isolated and surreptitious illegal act by an employee under circumstances where the licensee could not with responsible diligence acquire knowledge.
The Appellate Division rejected this argument on the ground that “ Leaving the premises in charge of an employee is sufferance of what that employee does (People ex rel. Price v. Sheffield Farms Co., 225 N. Y. 25) ”, A careful reading of Price and other applicable authorities indicates that this determination is erroneous.
In Price an employee of the defendant corporation used a 13-year-old. boy to assist him with his milk route. Although it was the employee who hired and paid the boy, the corporation was convicted of violating section 162 of the Labor Law, which prohibited employment of children ‘ ‘ under the age of fourteen years ”. In affirming the conviction, Judge Cardozo, speaking for the court, said: “ The employer, therefore, is chargeable with the sufferance of illegal conditions by the delegates of his power. But to say that does not tell us how sufferance may be implied * * * Sufferance as here prohibited implies knowledge or the opportunity through reasonable diligence to acquire knowledge. This presupposes in most cases a fair measure at least of continuity and permanence ” (People ex rel. Price v. Sheffield Farms Co., supra, p. 30; emphasis added).
It is clear from this language that Price does not support the Appellate Division’s broad statement that “ Leaving the premises in charge of an employee is sufferance of what that employee does ”. Moreover, whereas the illegal act which formed the basis of the charge in the present case was a single, isolated occurrence, the illegal act in Price was a continuing one, lasting more than six months. In addition, there was evidence in Price that the defendant had been negligent in failing to discover and prevent the employment of the child — especially since other evi *237 dence showed that the defendant knew that many of its drivers were employing young helpers, in violation of company rules.
Although the petitioner’s employee committed a heinous act, which we do not condone and, indeed, strongly condemn, we must address ourselves to the responsibility of the employer for that act and his rights under the Alcoholic Beverage Control Law. In our view the mere commission of this vile act, under the circumstances disclosed by the record, did not amount to “permitting and suffering the premises to become disorderly ”. The criminal act committed by the employee was a single, concealed act. It was in no way connected with the duties of the employee nor in furtherance of the employer’s business. Indeed, the act was committed several hours before the bar was opened to the public.
In the leading case of Matter of Migliaccio v. O’Connell (307 N. Y. 566), which relied on the guidelines set down in People ex rel. Price v. Sheffield Farms Co. (supra), the court said:
" the record contains no substantial evidence that the licensed or his manager knew or should have known that there were prostitutes present in the licensed premises at the time mentioned in the charge * * *
“We are not unmindful of the Authority’s efforts to curb disorderly conduct in licensed premises. Where, however, premises are claimed to be disorderly within the purview of the statute, and the Authority asserts constructive knowledge on the part of the licensee, substantial evidence of disorderliness — beyond a brief single occurrence of which the licensee may or may not have been aware—should be presented so as to establish that the licensee should have known that a disorderly condition prevailed” (p. 569; emphasis added).
In the present case, no such evidence was adduced. The Authority’s entire case consisted of the testimony of Detective Berger, who arrested the employee four days after the commission of the act; the testimony of John McCauley, Sr., the boy’s father; and, the testimony of Robert Murray, the employee. Detective Berger testified to making the arrest and to an admission made by Murray. Mr. McCauley testified to the fact that the boy told his wife what had occurred. Murray’s testimony is the hub of the Authority’s case. He stated that the boy came into the bowling alley (the licensed premises) at about 3:00 p.m. *238 After the boy started running in the building, Murray took him upstairs to a bathroom on the second floor. In exchange for a dollar, the boy permitted him to play with his penis. At the conclusion of the' incident, the boy left.
Murray also testified that he was the only one on the premises that day. In rebuttal, Mr. Zinner, president of the licensee, testified that he was on the premises, working in the office, but did not see the boy enter the building.
The Authority argues that, if the premises had been properly supervised, the molestation would not have occurred. This argument misses the mark, for the question remains whether the commission of a single, concealed act amounts to permitting or suffering the premises to become disorderly.
The record shows that Murray had never been in trouble before. The licensee had no reason to suspect him of having a proclivity for deviant behavior. What kind of diligent inquiry would have led to knowledge that such an act would be committed, we cannot say. If Mr. Zinner had been on the premises every moment of the day, it cannot be said that this act would not have occurred. If he stepped out for a cup of coffee, the crime could have been committed. If he made one or two telephone calls, the crime could have been committed. If he remained in the office, as he asserted, the crime could have been committed — and in fact was. As a practical matter, no amount of supervision could have prevented this single, concealed act.
In sum, since this was a single, concealed act committed at a time when the premises were not open to the public; since the petitioner had no knowledge and no opportunity to acquire knowledge; and, since there was no continuity nor permanence of any condition, we conclude that the petitioner did not permit or suffer the premises to become disorderly within the meaning of subdivision 6 of section 106 of the Alcoholic Beverage Control Law.
Accordingly, the order appealed from should be reversed, with costs, and the determination of the State Liquor Authority annulled.
Chief Judge Fuld and Judges Burke, Bergan, Keating, Breitbl and Jasen concur.
Order reversed, etc.