■ In the Matter of 244 EAST 53RD STREET RESTAURANT, INC., et al., Petitioners, v NEW YORK STATE LIQUOR AUTHORITY, Respondent. — In this transferred CPLR article 78 proceeding, determination of respondent New York State Liquor Authority, dated January 18, 1982, revoking petitioner's liquor license and imposing a $1,000 bond forfeiture, unanimously reversed, on the law,

without costs or disbursements, the petition granted and the determination annulled. The sanction of revocation and bond forfeiture was imposed after a finding by the hearing officer that the licensee had violated subdivision 6 of section 106 of the Alcoholic Beverage Control Law by "suffering or permitting the licensed premises to become disorderly in that it suffered or permitted males on the licensed premises to solicit other male patrons therein for immoral purposes (prostitution) on December 1st and December 16, 1980." The long-standing rule of law is that "conduct is not 'suffered or permitted' unless ' " 'the licensee or his manager knew or should have known' " ' of the asserted disorderly condition on the premises and tolerated its existence." (*Matter of Playboy Club of N. Y. v State Liq. Auth.*, 23 NY2d 544, 550, citing *Matter of Missouri Realty Corp. v New York State Liq. Auth.*, 22 NY2d 233, 237.) The hearing officer predicated his findings on the premise that certain private conversations between an undercover police officer and male prostitute were "so open and notorious" that the licensee, with the proper exercise of discretion, should have known of them. The evidence consisted of testimony of undercover police officers, who, as part of a covert operation, engaged male patrons at the licensed premises, a crowded, noisy, disco bar, in brief private conversations, unaccompanied by any passing of money or other physical contact, in which a sex-for-pay solicitation was made. There was no evidence that any employee or representative of the licensee overheard these conversations. In both the December 1 and December 16, 1980 operations three separate arrests were made, all occurring at least one block away from the premises. At no time after December 1, 1980 and before December 16, 1980 was the licensee notified that any act of solicitation for prostitution had taken place on the premises or that such activity was suspected. No evidence was presented that any of the arrestees had any prior arrest or conviction record or that any of them were known to the management. From the time of its purchase of the premises almost one year earlier the licensee had taken steps to insure that known prostitutes be kept off the premises. From our review of the record we find that the conclusion that the licensee should have known that solicitation for prostitution was occurring on the premises is without an evidentiary basis. We note, in passing, that the licensee closed the premises for two months in early 1981 to refurbish and convert the premises into a piano bar. Three police officers who made unannounced visits to the premises after its reopening testified that they found no evidence whatsoever of any solicitation for prostitution or of any other impropriety. In fact respondent and the city entered into a formal discontinuance with the licensee of a nuisance abatement action based on the incidents herein. Concur — Murphy, P. J., Sandler, Sullivan and Ross, JJ.

Kupferman, J., concurs in a memorandum as follows: I concur in the result. While there was substantial evidence that the petitioner's management should have known of the homosexual solicitations, the penalty imposed under the circumstances of this case was excessive. The petitioner, of his own volition, closed his premises for two months (the equivalent of a suspension of license) and renovated and converted the premises to provide a new atmosphere which would not have the former problems. The City of New York, having commenced a civil nuisance abatement action against the premises under the Administrative Code of the City of New York, on the ground that two or more convictions for acts of prostitution constitute a "public nuisance," stipulated with the petitioner that the nuisance abatement action would be discontinued if the premises were to be found to be orderly until September 30, 1981. The original acts of prostitution occurred in December, 1980. The voluntary closure for renovation was in January and February, 1981. The nuisance abatement

action was in February and the stipulation in July. On October 1, 1981, pursuant to the stipulation, the nuisance abatement action was discontinued. Under all of the circumstances, the revocation of license in January, 1982 based on the December, 1980 offenses, did not have a rational basis.