PROPERTY CLERK, NEW YORK CITY POLICE DEPARTMENT, Respondent, v SALVATORE J. PAGANO, Appellant.

First Department, August 1, 1991

## APPEARANCES OF COUNSEL

*Theodore S. Green* of counsel *(Green & Willstatter,* attorneys), for appellant.

*Janet L. Zaleon* of counsel *(Ellen B. Fishman* with her on the brief; *Victor A. Kovner, Corporation Counsel,* attorney), for respondent.

**OPINION OF THE COURT**

ELLERIN, J.

At issue on this appeal are the elements of proof which must be established by petitioner Property Clerk in a proceeding brought pursuant to Administrative Code of the City of New York § 14-140 to determine petitioner's right to retain property which has been used as a means of committing a crime, when the crime was committed by a party other than the owner of the property.

This action had its genesis in events which occurred on the night of September 30, 1989, when respondent's automobile, a 1989 BMW, was observed by Police Officers Erich Rechenberger and James Dupont being driven at an excessive speed and in a reckless manner. The driver of the automobile ignored a request that he stop and, instead, proceeded to lead the police on a high-speed chase through the streets of the Bronx, narrowly avoiding at least one potentially serious accident. Finally, the car pulled into the driveway and garage of respondent Salvatore Pagano and into the garage. Before the police could exit their vehicle, the door of the garage, which was operated electrically, closed in front of them.

The officers knocked on the garage door which, after some minutes, was opened by respondent and his wife, both in nightclothes. At that point, the officers realized that the driver of the car had evaded them by exiting the garage through a rear door. Respondent informed the police that the driver was his son whereupon the officers informed him that they intended to seize the automobile and suggested that he turn over the keys to the car in lieu of their having it towed away, which could cause damage to the car. After extended discussion, the officers finally received the keys from respondent and seized the automobile, ultimately turning it over to petitioner Property Clerk. Although respondent's son was subsequently issued two summonses based on the night's events, including one for reckless driving, both charges were ultimately dismissed when the officers failed to appear to testify at trial.

■ When the Property Clerk of the New York City Police Department seeks to justify his continued retention of property which has come into his possession but is no longer related to or needed as evidence in a pending criminal proceeding, due process requires that he commence a timely action in which he bears the burden of proof by a preponderance of the evidence that he or she is entitled to the property.

*(McClendon v Rosetti,* 460 F2d 111; *Property Clerk, N. Y. City Police Dept. v Seroda,* 131 AD2d 289.)

The circumstances under which petitioner is entitled to retain property are set forth in Administrative Code of the City of New York § 14-140 (e), which states, in pertinent part: "Where * * * property [has] * * * been used as a means of committing crime or employed in aid or in furtherance of crime or held, used or sold in violation of law * * * a person who * * * so used, employed, sold or held any such * * * property or permitted or suffered the same to be used, employed, sold or held * * * shall not be deemed to be the lawful claimant entitled to any such * * * property" (§ 14-140 [e] [1]).

█ In the instant case, we find that there is no question that petitioner sufficiently established that the automobile had been used in the commission of the misdemeanor of reckless driving (Vehicle and Traffic Law § 1190). The fact that respondent's son was never convicted of such crime and that the charges against him were dismissed, for failure of the police officers to appear, is no bar to a finding that the car was so used provided that, as in this case, the evidence presented at the proceeding demonstrated by a preponderance of the evidence that the crime was committed. *(Property Clerk of N. Y. City Police Dept. v Lanzetta,* 157 AD2d 600; *Property Clerk of N. Y. City Police Dept. v Hurlston,* 104 AD2d 312.) The evidence here was also sufficient to support the finding that respondent, who customarily left the keys where his son had access to them, permitted or acquiesced in his son's use of the car.

The IAS court held that once the Property Clerk established that respondent had permitted his son to use the automobile and that the automobile had been used in the commission of a crime, it was not necessary to additionally establish that respondent had permitted the *illegal* use of the car. Recognizing that this holding could inequitably permit the forfeiture of property in spite of an owner's innocent state of mind, and possibly endanger the constitutionality of the statute *(see, Calero-Toledo v Pearson Yacht Leasing Co.,* 416 US 663, 688-689), the court further ruled that the owner should be permitted to establish, as an affirmative defense, that he had done all he reasonably could to prevent the unlawful use of the property.

There appears to be some confusion concerning the issue of whether, in a proceeding brought pursuant to Administrative

Code § 14-140, an absentee owner need only be shown to have merely permitted the use of the property itself, or whether it is necessary to show that the owner permitted the illegal use of the property. At least one court has held, contrary to the IAS court in this case, that, in a proceeding brought pursuant to Administrative Code § 14-140, it is petitioner's burden to establish, as part of a prima facie case, that the owner permitted the illegal use. *(Property Clerk, N. Y. City Police Dept. v Covell,* 139 Misc 2d 707, 709-710 [Moskowitz, J.]; *but see, Property Clerk, N. Y. City Police Dept. v Scricca,* 140 Misc 2d 433.)

█ A careful examination of the statutory language shows that it is, in fact, somewhat ambiguous on this issue. The statute first deals with the retention of property where the owner is the one who actually used the property in the proscribed manner and expressly requires proof that the owner "so used, employed, sold or held" it. The use of the word "so" in this context clearly refers back to the qualifying language, which, insofar as relevant here, defines the property as that *"used* as a means of committing crime or *employed* in aid or in furtherance of crime" (emphasis supplied). The words "so used, employed, sold or held any such * * * property" are immediately followed by "or permitted or suffered the same to be used, employed, sold or held", in referring to an owner whose property was used by someone else for the proscribed purposes. The statute's failure to include the word "so" as a qualifier in this instance could be seen to create some ambiguity as to whether there exists a similar intent to refer back to the qualifying language. It is, however, a basic rule of statutory construction "that the same words used in clauses or sentences of a document will be construed to have been used in the same sense, unless the context indicates the contrary." *(Hodgson v Prophet Co.,* 472 F2d 196, 204.) Here, the intent to again include by reference the qualifying language is strongly implied by the repeated utilization of the specific phrase, "used, employed, sold or held", which quotes the words of the qualifying phrase. That this is the intended construction is further supported by the inclusion in this phrase of both "used" and "employed", which, unless each word is included for the specific purpose of referring back to the prior qualifying language, i.e., *"used* as a means of committing crime or *employed* in aid or in furtherance of crime", would otherwise be redundant and unnecessary. We find, therefore, that in order for petitioner Property Clerk to retain property which

was illegally used by one other than the owner, pursuant to Administrative Code § 14-140 (e), the petitioner must specifically prove that the defendant owner "permitted or suffered" the *illegal* use of the property. This construction is not only consistent with the over-all language of the Administrative Code provision but is also consonant with the purpose of the statute to permit petitioner to retain the property of criminal wrongdoers.

The interpretation of the provision urged by petitioner, which would limit its proof requirement to showing that the owner merely permitted the property to be used, rather than used as the instrumentality of or in furtherance of a crime, would give rise to an anomalous and, frequently, inequitable result since the petitioner would have a less rigorous burden of proof where the owner of the property is not directly involved in the illegal use of the property than when the owner is the one so actually engaged. It was apparently the IAS court's concern about this facial inequity that caused it to engraft onto the statute an escape clause by way of an affirmative defense which would allow a property owner to prove, in essence, that he had not been negligent in permitting another to use his property. This constituted an impermissible judicial rewriting of the statute. It must be emphasized that a proceeding brought under section 14-140 differs substantially from one brought pursuant to a forfeiture statute which expressly places the burden on a claimant to establish his innocent state of mind *(cf.,* Public Health Law § 3388 [6] [a]). Clearly section 14-140 contains no such language and, on the contrary, must be construed by its own terms to place an affirmative burden on petitioner.

Having concluded that petitioner bears the burden of proving that respondent "permitted or suffered" the illegal use of the property, it remains to define exactly what that entails. The courts have long held that a statute which holds a person liable for having permitted or suffered a certain activity may only be enforced against one who knew, or should have known, that the activity would take place—in this case that activity being use of the vehicle in furtherance of a crime. "Sufferance as here prohibited implies knowledge or the opportunity through reasonable diligence to acquire knowledge. This presupposes in most cases a fair measure at least of continuity and permanence." *(People ex rel. Price v Sheffield Farms-Slawson-Decker Co.,* 225 NY 25, 30 [Cardozo, J.]; *see also, Matter of 244 E. 53rd St. Rest. v New York State Liq.*

*Auth.,* 57 NY2d 667 *affg for the reasons stated at* 86 AD2d 832.)

■ Applying the foregoing principles to the instant case, it is clear that, at the very least, petitioner was required to establish that when respondent, on the date in question, permitted or acquiesced in his son's use of the car he knew or should have known that the car would be used as the instrumentality of or in furtherance of a crime. The question then is whether there is substantial evidence in the record here that petitioner fulfilled his burden of proof on that issue. We conclude that there is not.

While the trial court accurately characterized the son's driving record as "abominable", that record indicates that the son was never charged with anything beyond noncriminal traffic violations and that, while his license had previously been suspended for such violations, at the time of this incident he was duly licensed, his license having been restored by the appropriate authorities. There is nothing in the record to indicate that he had ever previously engaged in any criminal behavior involving a vehicle. Although the respondent may not have exercised optimal judgment in permitting or suffering the use of his car by his son—a failing which is perhaps shared by too many parents—it cannot be said that he knew, or should have known that on this occasion, unlike past experience, his son would use the car in the commission or furtherance of a crime. At that juncture there was lacking that "measure of continuity and permanence" of prior conduct —here criminal use of an automobile—necessary to charge one with implied knowledge that a particular course of conduct will thereafter ensue. *(Cf., People ex rel. Price v Sheffield Farms-Slawson-Decker Co., supra.)* The purpose of the Administrative Code provision here is to deprive those who have a real nexus with the criminal use of property—whether by their own actions or by knowledgeable acquiescence in such use by another—it is not designed to punish for a lack of clairvoyance.

In light of our holding herein, it is unnecessary to reach respondent's other arguments, including that the illegal seizure of the automobile rendered its retention by petitioner illegal regardless of the provisions of Administrative Code § 14-140.

Order and judgment, Supreme Court, Bronx County (Herbert Shapiro, J.), entered August 30, 1990, which adjudicated

petitioner to be the lawful claimant to respondent's automobile unanimously reversed, on the law, the adjudication vacated, the petition denied and respondent adjudicated the lawful claimant to the automobile, without costs.

MURPHY, P. J., MILONAS, WALLACH and KASSAL, JJ., concur.

Order and judgment (one paper), Supreme Court, Bronx County, entered on or about August 30, 1990, unanimously reversed, on the law, without costs, the adjudication vacated, the petition denied and respondent adjudicated the lawful claimant to the automobile. Application by petitioner for consolidation and related relief, granted.