STATE OF CONNECTICUT v. ONE 1981
BMW AUTOMOBILE
(5566)

BORDEN, BIELUCH and O'CONNELL, Js.

Argued November 13, 1987—decision released August 23, 1988

*John M. Massameno,* assistant state's attorney, with whom was *Roseanne Wagner,* legal intern, for the appellant (state).

*Joseph F. Keefe,* with whom, on the brief, was *David A. Moraghan,* for the appellee (defendant owner).

O'CONNELL, J. The state appeals from the judgment of dismissal of an in rem forfeiture action brought pursuant to General Statutes § 54-33g.[1] The state claims

[1] "[General Statutes] Sec. 54-33g. SUMMONS TO OWNER ON SEIZURE OF PROPERTY. IN REM ACTION FOR ADJUDICATION AS NUISANCE. DISPOSITION OF PROPERTY. (a) When any property believed to be possessed, controlled, designed or intended for use or which is or has been used or which may be used as a means of committing any criminal offense has been seized as a result of a search incident to an arrest, a warrantless arrest or a search warrant, which the state claims to be a nuisance and desires to have destroyed or disposed of in accordance with the provisions of this section, the judge or court issuing the warrant or before whom the arrested person is to be arraigned shall, within ten days after such seizure, cause to be left with the owner of, and with any person claiming of record a bona fide mortgage, assignment of lease or rent, lien or security interest in, the property so seized, or at his usual place of abode, if he is known, or, if unknown, at the place where the property was seized, a summons notifying the owner and any such other person claiming such interest and all others whom it may concern to appear before such judge or court, at a place and time named in such notice, which shall be not less than six nor more than twelve days after the service thereof, then and there to show cause why such property should not be adjudged a nuisance and ordered to be destroyed or otherwise disposed of as herein provided. Such summons may be signed by a clerk of the court or his assistant and service may be made by a local or state police officer. It shall describe such property with reasonable certainty and state when and where and why the same was seized.

"(b) If the owner of such property or any person claiming any interest in the same appears, he shall be made a party defendant in such case. Any

that the trial court erred (1) in finding that the information contained in the search and seizure warrant underlying this action was "stale" and did not support a determination of probable cause, and (2) in holding that the in rem action could not be sustained without an allegation of criminal activity on behalf of the vehicle's owner. We find error.

state's attorney or assistant state's attorney may appear and prosecute such complaint.

"(c) If the judge or court finds the allegations made in such complaint to be true and that the property has been possessed, controlled or designed for use, or is or has been or is intended to be used, with intent to violate or in violation of any of the criminal laws of this state, he shall render judgment that such property is a nuisance and order the same to be destroyed or disposed of to a charitable or educational institution or to a governmental agency or institution provided, if any such property is subject to a bona fide mortgage, assignment of lease or rent, lien or security interest, such property shall not be so destroyed or disposed of in violation of the rights of the holder of such interest. When any money or valuable prize has been seized upon such warrant and condemned under the provisions of this section, such money or valuable prize shall become the property of the state, provided any such property, which at the time of such order is subject to a bona fide mortgage, assignment of lease or rent, lien or security interest shall remain subject to such mortgage, assignment of lease or rent, lien or security interest. When any property or valuable prize has been declared a nuisance and condemned under this section, the court may also order that such property be sold by sale at public auction in which case the proceeds shall become the property of the state; provided, any person who has a bona fide mortgage, assignment of lease or rent, lien or security interest shall have the same right to the proceeds as he had in the property prior to sale. Final destruction or disposal of such property shall not be made until any criminal trial in which such property might be used as evidence has been completed.

"(d) If the judge or court finds the allegations not to be true or that the property has not been kept with intent to violate or in violation of the criminal laws of this state or that it is the property of a person not a defendant, he shall order the property returned to the owner forthwith and the party in possession of such property pending such determination shall be responsible and personally liable for such property from the time of seizure and shall immediately comply with such order.

"(e) Failure of the state to proceed against such property in accordance with the provisions of this section shall not prevent the use of such property as evidence in any criminal trial."

The factual background of this case is long and convoluted. In 1985, the state's first attempt to have this vehicle forfeited ended with a decision by this court that those proceedings were invalid for lack of personal jurisdiction. *State* v. *One 1981 BMW Automobile,* 5 Conn. App. 540, 500 A.2d 961 (1985) (*BMW I*). The sequence of events leading up to *BMW I* are detailed in that opinion and will not be repeated here. Significant developments subsequent to the earlier decision are as follows. On January 9, 1986, slightly more than one month after the decision in *BMW I,* a second search and seizure warrant was issued for the seizure of the BMW. The vehicle was seized by the state police the following day and a summons was served on the defendant, Daniel D. Skuret, the current owner of the automobile.[2] A summons was also served on Russell Kuskowski who was the BMW's record owner at the time of the initiation of *BMW I* and who was represented to be its owner when *BMW I* was argued in this court. Kuskowski had been represented at those proceedings, as well as in the criminal charges brought against him at that time, by Skuret, who is a member of the Connecticut bar. Subsequent to his arrest on the criminal charges, Kuskowski assigned his interest in the BMW to Skuret in payment of legal fees. The propriety of this transfer will be discussed in greater detail in part IV of this opinion, infra. Because Kuskowski no longer had an interest in the automobile, the trial court dismissed the present action as to him.

On January 17, 1986, the defendant appeared and filed a motion to dismiss the action claiming, inter alia, that (1) the search and seizure warrant was not based on probable cause due to its reliance on four year old information, and (2) at the time the warrant was executed, there was no allegation of criminal activity on

---

[2] Technically, the in rem proceeding was against the automobile although we refer to Skuret as the defendant in this action. See footnote 1, supra.

the part of the defendant, the vehicle's current owner. The court granted the motion and dismissed the forfeiture action.[3] The state has appealed.

## I

The state's first claim of error involves the court's determination that the search and seizure warrant issued was not grounded in probable cause because the affidavit concerned activities that had occurred in 1982, and had grown "stale" by January, 1986, when the second warrant was executed. The state argues that an allegation that property has been used in the commission of a crime cannot become stale. We agree.

Under both state and federal constitutional law, a search and seizure warrant shall not issue but upon probable cause. U.S. Const., amend. IV; Conn. Const., art. I § 7. " ' "Through the fourteenth amendment the fundamental federal constitutional safeguards as to the issuance of warrants embodied in the fourth amendment, as interpreted and applied in decisions of the United States Supreme Court, are made obligatory upon the states. *Ker* v. *California,* 374 U.S. 23, 33, 83 S. Ct. 1623, 10 L. Ed. 2d 726 [1963]." ' *State* v. *Jackson,* 162 Conn. 440, 443, 294 A.2d 517, cert. denied, 409 U.S. 870, 93 S. Ct. 198, 34 L. Ed. 2d 121 (1972); see *State* v. *Licari,* 153 Conn. 127, 214 A.2d 900 (1965)." *State* v. *Bember,* 183 Conn. 394, 409, 439 A.2d 387 (1981).

"We have stated that '[p]robable cause to search exists if: (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction . . . and (2) there is probable cause to believe that the items sought to be seized

---

[3] The vehicle has been returned to the possession of the defendant subject to specific conditions, pursuant to an order issued by the trial court on December 12, 1986.

will be found in the place to be searched.' *State* v. *DeChamplain,* 179 Conn. 522, 528–29, 427 A.2d 1338 (1980)." (Emphasis omitted.) *State* v. *Ferguson,* 185 Conn. 104, 111, 440 A.2d 841 (1981). Thus, a finding of probable cause to search involves a bipartite analysis and adequate information is required for each determination. See *State* v. *DeChamplain,* supra.

To fulfill these requirements, the state included information in its warrant and supporting affidavit to the effect (1) that the vehicle sought to be seized "had been used" as the means of committing the crime of "Possession of Cocaine with Intent to Sell, § 21a-277 (a) [and] Sale of Cocaine, § 21a-277 (a)," and (2) that the vehicle could be found at an automotive repair business located in Ansonia or in the possession of the owner, Skuret. The issuing judicial authority found these allegations supported by facts set forth in the warrant application and sufficient to establish probable cause.[4]

The trial court found the allegations of the criminal use of the vehicle to be stale. There is no claim of a contemporaneity problem with the second prong of the inquiry, i.e., the information regarding the locus of the property at the time of the execution of the warrant.

The staleness doctrine involves the concept that the passage of time can diminish the reliability of information provided in a search warrant request. See *State* v. *Carbone,* 172 Conn. 242, 250, 374 A.2d 215, cert. denied, 431 U.S. 967, 97 S. Ct. 2925, 53 L. Ed. 2d 1063 (1977). The doctrine, however, concerns itself with the

---

[4] In May of 1982, a police officer discovered the original owner of the vehicle, Kuskowski, in the BMW using cocaine. Pursuant to Kuskowski's arrest, the vehicle was searched and more cocaine, drug paraphernalia and cash were found. See *State* v. *One 1981 BMW Automobile,* 5 Conn. App. 540, 541, 500 A.2d 961 (1985). These facts provided the foundation for the state's initiation of both forfeiture actions. Kuskowski was subsequently convicted of the charges brought against him. See *State* v. *Kuskowski,* 200 Conn. 82, 510 A.2d 172 (1986).

*location* of the items to be seized and the likelihood that those items are located in the place alleged by the warrant application. See, e.g., *Sqro* v. *United States,* 287 U.S. 206, 53 S. Ct. 138, 77 L. Ed. 260 (1932); *Durham* v. *United States,* 403 F.2d 190, 193–94 n.3 (9th Cir. 1968); see also *State* v. *Carbone,* supra; *State* v. *Garcia,* 7 Conn. App. 354, 356, 508 A.2d 824 (1986); *State* v. *Burgos,* 7 Conn. App. 265, 269–70, 508 A.2d 795 (1986).

In many circumstances, the passage of time may affect the likelihood that the items sought have been moved.[5] In the present case there is no question of the timeliness of the information in the affidavit regarding the current locus of the automobile.[6]

We conclude, however, that the trial court's application of the staleness doctrine to the first prong of the probable cause analysis, (i.e., the connection between the property and the alleged criminal activity) was misguided.

Where, as here, facts have been alleged which constitute probable cause that certain events have taken place, the mere passage of time cannot diminish that conclusion. Stale does not simply mean old. An analogy can be drawn between the first prong of the probable cause analysis for a search warrant and the probable cause analysis for an arrest warrant.[7] Just as probable cause to arrest, once found, cannot be dissipated by the passage of time, probable cause to believe that

---

[5] Because we do not find the staleness doctrine applicable in this case, we need not venture into definitions of what may constitute an acceptable interval of time between the gathering of information for the affidavit and the issuance of the warrant.

[6] Indeed, the surveillance which provided information of the BMW's location was conducted on January 8 and 9, 1986. The warrant issued was dated January 9, 1986.

[7] Probable cause to arrest exists if: "(1) there is probable cause to believe a crime has been committed; and (2) there is probable cause to believe that the person to be arrested committed that crime." *State* v. *DeChamplain,* 179 Conn. 522, 529, 427 A.2d 1338 (1980).

property has been used in connection with a crime similarly cannot be diminished.[8] We hold that, under the facts of this case, the trial court erred in applying the staleness doctrine to the first prong of the probable cause analysis.[9]

## II

The state also contends that the trial court erred in concluding that, without an allegation of the defendant's involvement in criminal activity, the forfeiture action could not lie. We agree.

"General Statutes § 54-33g 'provides for a civil action *in rem* for the condemnation and forfeiture of the [property] which was used in violation of the law. . . . In such an action the guilt or innocence of the owner of the [property] is not in issue. The only issue is whether the [property] was used in violation of law. This follows from the nature of the action which is one against the *res,* an action *in rem.'* State v. Bucchieri, 176 Conn. 339, 345, 407 A.2d 990 (1978), quoting *Alcorn* v. *Alexandrovicz,* 112 Conn. 618, 623, 153 A. 786 (1931)." (Emphasis in original.) *State* v. *Connelly,* 194 Conn. 589, 592, 483 A.2d 1085 (1984).

This rule may indeed be harsh in some situations and, to counteract its claimed unfairness, certain exceptions to the rule have been made and constitutional protections often have been invoked. For example, the statute itself provides an exception to forfeiture for the holder of a "bona fide mortgage, assignment of lease

---

[8] Although we find that this information cannot grow stale, a protracted or undue delay in effectuating a seizure for forfeiture purposes may implicate the owner's constitutional right to due process. See *United States* v. *Kemp,* 690 F.2d 397, 401–402 n.5 (4th Cir. 1982); but see *United States* v. *One 1951 Douglas DC-6 Aircraft,* 667 F.2d 502 (6th Cir. 1981).

[9] This holding applies only to those factual circumstances wherein the state alleges that property "has been used" for criminal purposes. Where the allegation is that the property "is" being used or "may be used," those facts may very well be susceptible to a claim of staleness.

or rent, [or of a] lien or security interest." General Statutes § 54-33g (c). See footnote 1, supra. In addition, the United States Supreme Court has noted two instances where a forfeiture statute may violate the due process rights of the property's owner: " '[I]t would be difficult to reject the constitutional claim of an owner whose property subjected to forfeiture had been taken from him without his privity or consent. . . . Similarly, the same might be said of an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property. . . .' *State* v. *Connelly,* supra, 593 n.4." *State* v. *One 1977 Buick Automobile,* 196 Conn. 471, 486, 493 A.2d 874 (1985), quoting *Calero-Toledo* v. *Pearson Yacht Leasing Co.,* 416 U.S. 663, 689, 94 S. Ct. 2080, 40 L. Ed. 2d 452 (1974).

The status of the defendant in the present case does not bring him within any of the elucidated exceptions nor within any other exception of which we can conceive. In fact, as the recipient of Kuskowski's interest in the automobile, at a point in time after the alleged criminal activity and with knowledge of both that criminal activity and the state's attempts to have the vehicle adjudged a nuisance, the "innocence" of this defendant is in question. For us to allow the transfer of the vehicle's ownership to purge the criminal taint of the uses to which it had been put would be to thwart the obvious purpose of the statutory provision.Under the defendant's contention, any property used in the commission of a crime could be exempted from the in rem forfeiture statute through the simple expedient of a laundering transaction. This result would further neither the spirit nor the letter of our forfeiture statute.

### III

In his motion to dismiss this action in the trial court, the defendant claimed that he had been served with

a defective summons. The trial court did not address this claim in its memorandum of decision, relying instead on the issues previously discussed in this opinion. In his brief, however, the defendant again raises this claim, presumably as either an alternative ground for affirmance or as an adverse ruling for which he seeks review. We decline to review this claim for two reasons.

First, the defendant failed in two respects to comply with our rules of practice. Practice Book § 4013 (a) (1) provides: "If the appellee wishes to (A) present for review alternate grounds upon which the judgment may be affirmed, or (B) present for review adverse rulings or decisions of the court which should be considered on appeal in the event the appellant is awarded a new trial . . . that appellee *shall* file a preliminary statement of issues within fourteen days from the filing of the appellant's preliminary statement of the issues." (Emphasis added.) The defendant did not file a preliminary statement of issues. The defendant also failed to comply with Practice Book § 4066 (a), which requires that the appellee's brief contain "[a] counter statement of any issue involved as to which the appellee disagrees with the statement of the appellant or a statement of any other grounds which were properly raised by an appellee under Sec. 4013." The defendant did not include a statement of issues in his brief and, even if he had, the claim he now raises is neither a "counter statement" of an appellant's issue nor an issue "properly raised . . . under Sec. 4013." The defendant's failure to follow the dictates of our Practice Book provides sufficient grounds for our refusal to review the claim now raised by the defendant. See, e.g., *State* v. *Hudson*, 14 Conn. App. 463, 471 n.4, 541 A.2d 534 (1988); *White Oak Corporation* v. *Department of Consumer Protection*, 12 Conn. App. 251, 257 n.11, 530 A.2d 641 (1987); see also *Cristofaro* v. *Planning & Zon-*

ing Commission, 11 Conn. App. 260, 265–66, 527 A.2d 255 (Bieluch, J., dissenting), cert. denied, 204 Conn. 810, 528 A.2d 1156 (1987).

Second, we find fatal the defendant's failure to request an articulation pursuant to Practice Book § 4051 regarding the trial court's disposition of this claim at trial. Without a clear finding by the trial court of the facts which underlie the defendant's claim, we do not know the true nature of the issue we are asked to review. The defendant has clearly failed to carry his burden in properly presenting a claim for our review. See Leo v. Leo, 197 Conn. 1, 3–4, 495 A.2d 704 (1985); Vaiuso v. Vaiuso, 2 Conn. App. 141, 149, 477 A.2d 678, cert. denied, 194 Conn. 807, 482 A.2d 712 (1984).

We conclude that the defendant's failure to identify this issue in a preliminary statement of issues, his failure to request an articulation of the trial court's disposition of the claim, his failure to file a statement of issues in his brief, and his introduction of the issue for the first time in his appellee's brief constitutes appeal by ambuscade. We refuse to consider this issue. See Practice Book § 4013 (a) (1).

## IV

At oral argument before this court, the parties were questioned regarding the propriety of the 1982 transfer of the BMW from its then owner, Kuskowski, to the defendant. Although this issue is not dispositive of the substantive claims presented in this appeal, it raises questions which we cannot ignore.

The following chronology can be gleaned from the relevant records and files. Kuskowski was arrested on May 3, 1982. On the following day, a search and seizure warrant was issued for the BMW and an in rem summons was served on Kuskowski, thereby initiating the first forfeiture action brought pursuant to General

Statutes § 54-33g. An appearance was filed on behalf of Kuskowski in the criminal case by the law offices of the present defendant on May 11, 1982. On July 16, 1982, Kuskowski executed an assignment of "all right, title and interest that he may have" in the BMW to his attorney, the defendant.[10]

Kuskowski thereafter went to trial, before a jury, and was convicted of the crimes with which he was charged on February 2, 1983. On March 1, 1983, the defendant filed his appearance in the in rem action on behalf of the "owner" of the vehicle and also filed a motion to dismiss the original forfeiture action on behalf of "the owner, Russell Kuskowski." On May 3, the trial court found the BMW to be a nuisance pursuant to General Statutes § 54-33g and ordered it forfeited to the state. That forfeiture was the subject of our decision in *BMW I.*

The issue raised by the foregoing information is a possible violation of Disciplinary Rule 5-103 (A) of our state Code of Professional Responsibility.[11] In pertinent part, that rule provided that "[a] lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation he is conducting for a client, except

---

[10] The sworn document by which the assignment was made was introduced by the defendant in the second forfeiture action.

[11] The Code of Professional Responsibility, effective October 1, 1972, has been recently supplanted by the Rules of Professional Conduct, which became effective on October 1, 1986. Because the activities in question here occurred prior to 1986, however, the Code of Professional Responsibility governs the defendant's conduct.

It is important to note, however, that the provision at issue here also appears in the newly adopted Rules almost verbatim. Rules of Professional Conduct Rule 1.8 (j). Furthermore, this prohibition also appeared in the predecessor to the Code of Professional Responsibility, the Canons of Professional Ethics, which provided guidelines for attorney conduct from 1908 to 1962. See Canons of Professional Ethics Canon 10. ("The lawyer should not purchase any interest in the subject matter of the litigation which he is conducting.")

that he may: (1) Acquire a lien granted by law to secure his fees or expenses. (2) Contract with a client for a reasonable contingent fee in a civil case."

It is generally accepted that this provision was originally a response to the common law disapproval of champerty and maintenance;[12] Rules of Professional Conduct Rule 1.8 comment; however, it is also currently recognized as an attempt to avoid unnecessary conflicts of interest between attorneys and clients. "The possibility of an adverse effect upon the exercise of free judgment by a lawyer on behalf of his client during litigation generally makes it undesirable for the lawyer to acquire a proprietary interest in  . . .  the outcome of the litigation. . . ." Code of Professional Responsibility EC 5-7; see also C. Wolfram, Modern Legal Ethics § 8.13.

As they appear from the various documents before us, the facts strongly suggest that the defendant's acceptance of Kuskowski's interest in the BMW was in violation of this rule. It is not within the province of this court, however, to determine whether or not a violation has in fact occurred. This court, therefore, will refer the matter to the statewide bar counsel pursuant to Practice Book § 27F for investigation and such action as that authority deems proper.

V

The possible ethical violation discussed in the concurring opinion did not occur in the course of argument in the present case, but during the argument in *BMW I* which took place in 1985. We do not condone any misrepresentation which may have been made during the hearing of the earlier case.

---

[12] "Maintenance at common law signifies an unlawful taking in hand or upholding of quarrels, or sides, to the disturbance or hindrance of common right. The maintaining of one side, in consideration of some bargain to have part of the thing in dispute, is called champerty. Champerty therefore is a species of maintenance." *Richardson* v. *Rowland,* 40 Conn. 565, 570 (1873).

There is error, the judgment is set aside and the case is remanded for further proceedings according to law.

In this opinion BIELUCH, J., concurred.

BORDEN, J., concurring. I agree with the majority opinion, as far as it goes. I write separately because in my view it does not go far enough in bringing to light an apparent violation of the Code of Professional Responsibility by the defendant occurring in the presence of this court.

Part IV of the majority opinion properly notes a possible violation of the code by the defendant in acquiring his interest in the car which is the subject matter of this litigation, and it properly notes that the matter will be referred to the statewide bar counsel, because the appropriate grievance panel has jurisdiction over ethical violations not occurring in the presence of the court. See Practice Book §§ 29, 30 and 31 (a). It does not note, however, that in the course of the argument of this appeal, facts were disclosed to us which constitute a possible violation of the code occurring in the presence of this court, over which that committee does not have jurisdiction. Id.

*State* v. *One 1981 BMW Automobile,* 5 Conn. App. 540, 500 A.2d 961 (1985) (*BMW I*), was briefed, argued and decided on the explicit representation by Daniel D. Skuret, the attorney for Russell Kuskowski in that case, that Kuskowski was the owner of the car and that Skuret represented him as his attorney. That is quite clear from even a cursory reading of *BMW I,* from a reading of Kuskowski's brief in that case, which I have reviewed, and from the facts stated in the majority opinion in this case. We have now learned, in the course of this appeal, that since July 16, 1982, Kuskowski had no interest whatsoever in the car, and that on that date Skuret acquired ownership of the car as a legal

fee. Skuret, however, continued to represent both to the trial court in 1983, and to this court in 1985, that Kuskowski was the owner of the car.

Disciplinary Rule 7-102 (A) (4) of the code, entitled "Representing a Client Within the Bounds of the Law," in effect and governing Skuret's conduct before this court in 1985, provided: "(A) In his representation of a client, a lawyer shall not: . . . (4) knowingly use perjured testimony or false evidence." Rule 3.3 of the Rules of Professional Conduct contain an essentially similar provision. Skuret's course of conduct in representing to this court that Kuskowski was the owner of the car, when in fact Skuret himself was its owner, raises a possible ethical violation, flowing from his duty as an attorney in the course of *BMW I* to be candid and honest to this tribunal.

Of striking significance is the strong suggestion from the records of *BMW I* and this case that Skuret knowingly misrepresented to this court, in the course of *BMW I,* that Kuskowski was the car's owner, when in fact Kuskowski was not its owner, and when Skuret's ownership itself may have been in violation of the canons of ethics. This, it seems to me, is a possible violation of Disciplinary Rule 7-102 (A) (4), occurring in the presence of this court.

Furthermore, by that misrepresentation Skuret induced this court to decide *BMW I,* indeed to decide it in *his* favor, when, had we been properly informed that Kuskowski no longer had any interest in the car, arguably we would have dismissed the appeal as moot. It is a fundamental principle of appellate jurisdiction that a property owner must maintain his interest in the property which is the subject matter of litigation throughout an appeal in order to maintain his standing to appeal. See *Groesbeck* v. *Sotire,* 1 Conn. App. 66, 68–69, 467 A.2d 1245 (1983). So far as we were informed in *BMW I,* the owner of the car was Kuskowski.

It was *his* appeal as owner that we decided. Certainly, had we known in 1985 that the true owner of the car was Skuret, the attorney purportedly representing Kuskowski, who in fact no longer had any interest in whether the car was forfeited to the state, the disposition of *BMW I* may well have been different. Indeed, had we dismissed *BMW I* as moot, the present case would never have been litigated.

This course of conduct, however, cannot be addressed by a grievance panel, because it occurred in the presence of the court. See Practice Book §§ 29, 30 and 31 (a). It is my belief that this conduct should be addressed by the entire Appellate Court, or by some panel or tribunal acting as an arm of this court. Regrettably, the Appellate Court has determined to ignore this possible affront to the integrity of its appellate process. I disagree with that determination.