*674 OPINION OF THE COURT
Lewis R. Friedman, J.
Law enforcement officials have moved toward increased reliance on civil forfeiture statutes to aid "the war on crime.” The forfeiture concept is justified on many different bases but, in the minds of most of those involved with law enforcement, the main advantage of forfeitures is that they make criminal offenses financially expensive so as to deter those who would engage in similar activity (see, e.g., Cuomo, Asset Forfeitures Bill Framed for Drug War, NYLJ, Jan. 17, 1990, at 39, col 5). Numerous forfeiture laws have been passed recently that are related to specific underlying crimes (e.g., CPLR art 13-A [felonies]; Public Health Law § 3388 [drugs]; Tax Law § 1846 [untaxed cigarettes]; 18 USC § 1961 et seq. [racketeering, RICO]; 18 USC § 1467 [obscene materials]; 21 USC § 881 [a] [drugs]). In this case the New York City Police Department, through its Property Clerk, puts to an unusual use one of New York’s oldest forfeiture provisions, the New York City Administrative Code (first enacted as part of the Code of Criminal Procedure, L 1881, ch 442)[1] — enforcement of the antiprostitution laws.
This case, the first of what the court is advised is many, originates from the increased effort by the Police Department to stem a local "quality of life” problem in the Bronx — the growing number of areas with rampant street prostitution. In addition to the traditional procedure of arresting prostitutes, the police are now using female undercover police officers to arrest the consumers or "Johns”. In this case respondent approached an undercover officer at a "known prostitution area” and solicited her to perform oral sex for $20; she agreed. When respondent asked the officer to get into his car to perform the act, she responded that she would meet him "around the corner.” Respondent drove around the corner and was arrested by the "covering” team for patronizing a prostitute (Penal Law § 230.03). Respondent’s 1980 Chevrolet was seized. This court has not been advised of the disposition of the criminal case.
In the instant proceeding, the Property Clerk seeks to have *675 the car forfeited pursuant to the Administrative Code of the City of New York. Section 14-140 (b) provides, in pertinent part, that the Property Clerk may take possession of "all property * * * suspected of having been used as a means of committing crime or employed in aid or furtherance of crime”. Where the seized property has "been used as a means of committing crime or employed in aid or in furtherance of crime * * * a person * * * who so used, [or] employed * * * any such * * * property or permitted or suffered the same to be used, [or] employed * * * or who was a participant or accomplice in any such act * * * shall not be deemed to be the lawful claimant entitled to any such money or property” (Administrative Code § 14-140 [e] [1]). The cases hold that this statutory scheme permits the Property Clerk to seek forfeiture of items used "in aid or furtherance of crime” (Property Clerk, N. Y. City Police Dept. v Hyne, 147 Misc 2d 774, 777, affd 171 AD2d 506; Moreno v City of New York, 69 NY2d 432, 435-436; Property Clerk, N. Y. City Police Dept. v Seroda, 131 AD2d 289, 295).
It appears that the Property Clerk has taken the proper procedural steps for forfeiture (see, Matter of DeBellis v Property Clerk of City of N. Y., 78 NY2d 852; McClendon v Rosetti, US Dist Ct, SD NY, 70 Civ 3851 [1974] [unpublished order], see, 369 F Supp 1391). That is, the Property Clerk has commenced this special proceeding within the requisite time and has served proper papers, in a proper manner, on the persons required to be served — the owner and person from whom the car was seized (CPLR 403; Administrative Code § 14-140).
The first question for decision then is whether respondent’s car has been "employed in aid or furtherance of crime”. Neither the statute nor the cases clearly defines the nexus between a vehicle and an underlying crime which is sufficient to justify the vehicle’s forfeiture.
While many trial court Judges have apparently read the Administrative Code’s forfeiture provisions in a narrow fashion and have found the nexus to be inadequate, the appellate courts have consistently reversed and upheld the forfeitures. For example, the First Department, in reversing lower courts, has recently concluded that a car used to drive away from the scene of the purchase of illicit drugs is used to "aid a crime” (Property Clerk of N. Y. City Police Dept. v Negron, 157 AD2d 602, 603; Property Clerk of N. Y. City Police Dept. v Amato, 171 AD2d 550); the car need not have been used for escape, lookout, concealment, or to facilitate the sale (Property Clerk *676 of N. Y. City Police Dept. v Aponte, 158 AD2d 431). Indeed, if an arrested person merely sniffs cocaine in a car, that is sufficient to permit forfeiture of the vehicle, since the car is used "to facilitate the possession and use of illegal drugs” (Property Clerk of N. Y. City Police Dept. v Vogel, 175 AD2d 760, 761). As the Court of Appeals noted, in reversing the lower courts, all the Property Clerk need do is show by a preponderance of the evidence that the property is subject to forfeiture in order to establish a legally sufficient case; the disposition of the underlying criminal case is irrelevant to the resolution of the forfeiture action (Property Clerk of N. Y. City Police Dept. v Ferris, 77 NY2d 428; Property Clerk of N. Y. City Police Dept. v Hurlston, 104 AD2d 312, 313; Property Clerk of N. Y. City Police Dept. v Conca, 148 AD2d 301, 302).
This court finds that the Property Clerk has made a sufficient showing here. According to the undisputed facts, respondent suggested that the sexual act be committed in his vehicle; the undercover police officer agreed to perform in the vehicle. Thus, the vehicle was employed "in aid or furtherance of crime.” The vehicle facilitated the crime by permitting the agreed act to be performed in an atmosphere of relative privacy (see, Property Clerk of N. Y. City Police Dept. v Vogel, supra; United States v Premises Known as 3639-2nd St., N.E., 869 F2d 1093, 1096 [8th Cir]). Although the performance of sexual acts in an automobile on the public streets is protected from prosecution for public lewdness (People v McNamara, 78 NY2d 626), that does not prevent a forfeiture here. The act that respondent is proven to have committed, patronizing a prostitute, is a crime whether the consummation of the bargained for, underlying sexual act was to be in a public or a private place.
The Administrative Code applies to any crime or criminal conduct. It is irrelevant that the crime here, a class B misdemeanor, is not one of the more "serious” crimes for which special forfeiture statutes have been written. The language of the statute and the reported cases lead inescapably to the conclusion, that once the Property Clerk commenced this forfeiture proceeding in a proper fashion, an order to forfeit the car is mandatory. Unless the owner of the forfeited property has done "all that reasonably could be expected to prevent the proscribed use of his property” (Calero-Toledo v Pearson Yacht Leasing Co., 416 US 663, 689; United States v One Tintoretto Painting, 691 F2d 603 [2d Cir]; Property Clerk, N. Y. City Police Dept. v Pagano, 170 AD2d 30), the courts *677 lack even the power to deny a forfeiture "in the interests of justice” (Property Clerk of N. Y. City Police Dept. v Ferris, supra, at 431; compare, CPLR 1311 [4]). The court need not, and indeed, may not, express its views on whether a forfeiture for the crime committed here is appropriate. The terms of the statute are solely questions for the Legislature; the decision whether to use the statutory device is solely a question for the executive branch. Clearly the statute permits the forfeiture here.
However, that does not end the judicial inquiry. The case presents the question of whether a forfeiture of the magnitude here, the loss of an automobile because the owner seeks to have a prostitute perform a sexual act in it for $20, can pass muster under the Federal or State Constitutions. There are no authorities on the subject under the State Constitution. However, recent cases hold that, under certain circumstances, the imposition of a civil fine may constitute punishment subject to the Eighth Amendment’s proscription against excessive fines. In United States v Halper (490 US 435) the court held that a "civil” sanction which is "overwhelmingly disproportionate” to the goal of compensating the government leads to the presumption that the sanction is "punitive” and subject to the Double Jeopardy Clause. The high court has held that Halper "implies that punitive damages awarded to the Government in a civil action may raise Eighth Amendment concerns” (Browning-Ferris Indus. v Kelco Disposal, 492 US 257, 275, n 21; Ingraham v Wright, 430 US 651, 669, n 37; United States v Halper, 490 US, supra, at 442; see, Note, United States v. Halper, Punitive Civil Fines, and the Double Jeopardy and Excessive Fines Clauses, 66 NYU L Rev 112, 142-147). Many Federal courts have held that the Eighth Amendment applies to civil forfeitures (e.g., United States v Feldman, 853 F2d 648, 663 [9th Cir]; United States v Horak, 833 F2d 1235, 1251 [7th Cir]; United States v Robinson, 721 F Supp 1541, 1543-1545 [D RI]).
The Appellate Division has recently affirmed a holding that a forfeiture under the Administrative Code is a constitutionally valid exercise of the power to impose civil, as opposed to criminal, sanctions (Property Clerk, N. Y. City Police Dept. v Hyne, 147 Misc 2d, supra, at 779, affd 171 AD2d 506, supra). The court found that there are predominating civil aspects to a forfeiture so as to permit a civil proceeding. Thus, under the tests of United States v Ward (448 US 242), Kennedy v Mendoza-Martinez (372 US 144, 168-169) and United States v *678 $2500 in U. S. Currency (689 F2d 10, 12-13 [2d Cir]) forfeitures of the type sought to be used here were "inherently civil.” The court did not examine whether an Administrative Code in rem forfeiture in a particular case was constitutional under the Eighth Amendment. However, the Second Circuit has recently held that Halper (supra) applies to "excessive” civil forfeitures. "Forfeitures that are overwhelmingly disproportionate to the value of the offense must be classified as punishment unless the forfeitures are shown to serve articulated, legitimate civil purposes” (United States v Certain Real Prop. & Premises Known as 38 Whalers Cove Dr., 954 F2d 29, 35). Among the legitimate purposes for forfeitures are the removal of the instrumentality of crime from circulation and the prevention of further illicit use (see, Plymouth Sedan v Pennsylvania, 380 US 693, 699), impeding the success of a criminal enterprise by "eliminating its resources and instrumentalities” (United States v $2500 in U. S. Currency, 689 F2d, supra, at 13), and compensating the government for investigation and enforcement expenses, as well as for "liquidated damages” caused by the wrongdoer (One Lot Emerald Cut Stones v United States, 409 US 232, 237; Calero-Toledo v Pearson Yacht Leasing Co., 416 US, supra, at 687, n 26).
"Retribution and deterrence are not legitimate nonpunitive governmental objectives” (Bell v Wolfish, 441 US 520, 539, n 20; Kennedy v Mendoza-Martinez, 372 US, supra, at 168). Of course, every forfeiture proceeding may well have the collateral effect of deterring others from engaging in underlying criminal conduct in the future. However, it appears that Halper (supra), as interpreted by 38 Whalers Cove (supra), requires that each forfeiture must be examined to determine if it is justified by a civil remedial purpose or whether the forfeiture, or portions of it, can be explained only with reference to punitive goals. That means that the court must evaluate the sanction for the underlying crime and determine if the forfeiture in the particular case is unreasonable.
The Cruel and Unusual Punishment Clause of the Eighth Amendment prescribes the imposition of punishment which is "grossly disproportionate” to the crime committed (Salem v Helm, 463 US 277, 290-292). "We have recognized that the Eighth Amendment imposes 'parallel limitations’ on bail, fines, and other punishments, Ingraham v. Wright, [430 US], at 664, and the text [of the Amendment] is explicit that bail and fines may not be excessive” (463 US, supra, at 289). Proportionality review of a penal sanction, such as a forfei *679 turc, requires the court to examine three objective factors: (1) the gravity of the offense; (2) sentences imposed in the same jurisdiction for similarly grave offenses; and (3) sentences imposed for the same crime in other jurisdictions (463 US, supra, at 290-292).[2] Under the Solem framework, the forfeiture here, even if penal, should stand.
The crime is a minor one. Indeed, the Penal Law defines patronizing a prostitute in the fourth degree as one of New York’s least serious crimes, a class B misdemeanor, one step above a noncriminal violation (Penal Law § 10.00 [6]). The conduct respondent committed here was a nonviolent crime involving only consenting adults, without coercion or duress (compare, Penal Law §§ 230.04, 230.05, 230.06 [where the penalty for patronizing prostitutes who are minors is substantially higher]). Of course, Solem (supra) teaches that the treatment of the offense by the State is the relevant test, not the price charged for the underlying criminal act. The court may not place its own value judgment on the seriousness of the offense. Thus, while the crime is deemed by many to have a serious negative impact on the "quality of life” in the affected neighborhood, the Legislature has treated the offense as relatively insignificant.
The sentence established by New York for the crime is also relatively minor. This crime, as with all class B misdemeanors, is punishable by at most a 3-month jail sentence and a $500 fine (Penal Law § 70.15 [2]; § 80.05 [2]). Thus the State has found that a fine in the amount of $500 is appropriate (regardless of the amount charged by the prostitute). Under the circumstances of this case there is no need to survey other jurisdictions for it is clear that the forfeiture here as well as the crime is essentially minor. (The court would in any event reject the analysis of the Second Circuit in 38 Whalers Cove [supra], where the court looks to the law of other States to see the maximum possible sentence for certain crimes without examining the sentences actually imposed by those jurisdictions.)
Although the value of the vehicle in question has not been definitively established in the papers submitted here, the 1980 Chevrolet has a value of from $550 to $750 (see, e.g., NADA, Appraisal Guide: Official Older Used Car Guide, Val *680 ues for Older Models 1975-1984, at 20 [1992]). It appears that the forfeiture here, even if treated as punitive, is substantially in line with the punishment provided for the underlying crime and does not offend the court as excessive. In 38 Whalers Cove (supra), the Second Circuit upheld against an Eighth Amendment attack the forfeiture of a condominium apartment in which the owner’s equity was worth at least $68,000; the owner had sold 2 Vz grams of cocaine, had pleaded guilty in State court to attempted sale of a controlled substance, and was sentenced to probation and a small fine. In Calero-Toledo v Pearson Yacht Leasing Co. (supra), the court upheld against a constitutional challenge the forfeiture of an innocent owner’s $19,800 yacht upon which a marihuana cigarette was found. Those cases and similar State and Federal cases upholding substantial forfeitures have involved either illicit drugs or criminal racketeering enterprises (e.g., Property Clerk of N. Y. City Police Dept. v Amato, supra; Property Clerk of N. Y. City Police Dept. v Vogel, supra). The court has been unable to find any case which has upheld a substantial forfeiture for a crime treated as minor by the jurisdiction in question; similarly the court can find no authority to invalidate a minor forfeiture for a minor crime.
Thus the petition must be granted.

. In rem forfeitures appear in the early jurisprudence in this country (e.g., The Palmyra, 12 Wheat [25 US] 1, 9 [1827]). Holmes traced the sources of such in rem matters to the Old Testament (Exodus xxi, 28), the Greeks, the Romans, and the early English common law (Holmes, Common Law, at 7-9).

. Proportionality review is explicitly required in some forfeiture statutes such as 18 USC § 1467 (a) (3) (see, United States v California Publishers Liquidating Corp., 778 F Supp 1377 [ND Tex]).