[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an in rem proceeding to determine the disposition of a 1982 Gray Nissan automobile owned by defendant Gezim Mjshtri,[1] which was seized by the Hartford Police Department on December 2, 1992, incident to Mjshtri's arrest for solicitation of prostitution in the Frog Hollow section of Hartford. The State has moved this court for a judgment, pursuant to Connecticut General Statutes (hereinafter "C.G.S."), Section 54-33g, declaring the defendant vehicle to be a nuisance; and ordering its forfeiture.
On December 8, 1992, Mjshtri, as the registered owner of the defendant Nissan automobile, was properly served with a summons by the Hartford Police Department, pursuant to C.G.S. § 54-33g(a), notifying him of a hearing on the seizure of his vehicle scheduled for December 16, 1992. On December 16, 1992, Mjshtri appeared for the hearing without counsel, refused the court's suggestion that a continuance of the hearing be granted CT Page 8672 in order to allow him time to consult with an attorney, and chose to proceed Pro se. At the hearing, the State called three Hartford Police Department officers as witnesses and Mr. Mjshtri testified on his own behalf. On January 20, 1993, the State filed its Memorandum In Support of the State's Request that the Court Order Forfeiture of Property Used to Facilitate a Crime, (hereinafter "State's Memo."). Mjshtri did not file a response in opposition.
Having considered the entire record of this case, this court finds that the State has failed to prove by clear and convincing evidence that the defendant 1982 Gray Nissan automobile was possessed, controlled or designed for use or is or has been or was intended to be used, as a means of committing automobile was possessed, controlled or designed for use or is or has been or was intended to be used, as a means of committing the offense of solicitation of prostitution or with intent to violate or in violation of any of the criminal laws of the State of Connecticut. Accordingly, for the reasons which follow, forfeiture of the defendant vehicle is unwarranted.
 FACTS
On December 2, 1992, the Hartford Police Department conducted an undercover sting operation aimed at reducing solicitation of prostitution in a Frog Hollow neighborhood long plagued by such activity. The operation intended to target the "johns," the consumers of sex, and initiated a new strategy for combatting prostitution in the area by seizing the "johns" automobiles and seeking their forfeiture. As part of the sting, a police "decoy," an undercover female police officer posing as a prostitute, stood on the corner of Broad Street and Allen Place, an area frequented by a large number of prostitutes, and waited to be approached by a "john." The undercover officer wore a transmitter so that a Hartford police sergeant standing approximately twenty-five feet away could listen with a receiver to their conversation.
At approximately 6:25 p.m., the defendant vehicle was observed travelling south on Broad Street, turn right onto Allen Place and pull to the curb where the decoy was standing. It was the first vehicle to approach the undercover officer that evening. The driver of the vehicle, the defendant Mjshtri, rolled down the car window and leaned across the front seat to speak to the decoy. The undercover officer said, "Hello, what are you looking for?" The defendant replied, "A lay," slang for sexual intercourse. The undercover officer stated, "What's CT Page 8673 the deal?" And, the defendant answered, "Thirty dollars."[2]
Immediately thereafter, the defendant was arrested for soliciting a prostitute and his 1982 Nissan was seized as a result of his lawful arrest.
 DISCUSSION
The State seeks forfeiture of the defendant automobile pursuant to C.G.S. § 54-33g. Section 54-33g(a) requires the issuance of a summons to the owner or any person claiming an interest in "any property believed to be possessed, controlled, designed or intended for use or which is or has been used or which may be used as a means of committing any criminal offense, except a violation of section 21a-267, 21a-277, 21a-278 or21a-279," which "has been seized as a result of a lawful arrest or lawful search" and "which the State claims to be a nuisance and desires to have destroyed or disposed of in accordance with the provisions of this section. . . ." Section 54-33g(c) provides that seized property will be forfeited, "[i]f the judge or court finds the allegations made in such complaint to be true and that the property has been possessed, controlled or designed for use, or is or has been or is intended to be used, with intent to violate or in violation of any of the criminal laws of this state, except a violation of section 21a-267, 21a-277, 21a-278
or 21a-279. . . ." The State bears the burden of establishing, by clear and convincing evidence, that the property should be declared a nuisance. C.G.S. § 54-33g(b).
The State contends that the use of the defendant automobile was essential to the defendant's commission of a violation of C.G.S. 53a-83, Solicitation of Prostitution.[3] In support of this position, the State offered the testimony of Sgt. David Canary, a supervisor of the Hartford Police Department Vice and Narcotics Squad for the last six years, concerning the "modus operandi" of "johns" who come to Frog Hollow to solicit prostitutes. Sgt. Canary testified that, in his experience, in this particular area of Hartford, specifically Broad Street and Allen Place, an area known to be a marketplace for prostitutes, the "johns", the purchasers of sex, "have to arrive in a vehicle." Upon arrival in the area, the "johns" drive around and "shop" for a prostitute. Most often, the "john" solicits the prostitute while he is in the vehicle because it provides privacy and a quick means of escape if necessary. According to Sgt. Canary, ninety-five percent of the time, the solicited sexual act occurs inside the vehicle. When the sexual conduct does not take place in the car, it is used to transport the "john" and the prostitute to CT Page 8674 another location where the sexual activity occurs. State's Memo, p. 2.
Neither the action of the 1982 Nissan involved in this case, nor of the defendant Mjshtri, however, fit the profile of the typical prostitution case described by Sgt. Canary. The Nissan was not observed driving around the area as if the occupant was "shopping" for a prostitute. The defendant drove directly to the police decoy. Moreover, the defendant and the decoy did not discuss having sexual intercourse inside the Nissan or using it to transport the prostitute to the location where the sexual act would occur. The only connection between the Nissan and the crime of prostitution is that the defendant used the car to drive into the Frog Hollow neighborhood and solicited the "prostitute" while he was seated in the car and she was standing on the curb. The issue before the court, therefore, is whether these facts constitute clear and convincing evidence that the defendant Nissan was used as a means of committing the crime of solicitation of a prostitution or in violation of C.G.S. § 53a-83.
The State contends that to justify the forfeiture of the defendant vehicle in the present case pursuant to C.G.S. § 54-33g, it merely has to establish that the automobile was used to "facilitate in any manner" the crime of solicitation of prostitution. State's Memo. p. 5. This "facilitation" standard is adopted by the State from federal drug forfeiture cases, andState v. Connelly, 194 Conn. 589, 593 n. 4, 483 A.2d 1085 (1984), where the supreme Court stated that "while the analogous statutes,21 U.S.C. § 881 and 49 U.S.C. § 781, 782, contain language different from that of General Statutes § 54-33g, we find the federal authority persuasive in our application of 11 § 54-33g to violations of § 19-481 (a)." This Court disagrees, however, that Connelly is dispositive of the instant case. This court finds that the broader "facilitation in any manner" standard should not be applied to a determination of whether the defendant automobile should be forfeited pursuant to C.G.S. § 54-33g.
Unlike C.G.S. § 54-33g, the "facilitation" standard is used in the federal drug forfeiture statute itself. Title 21 of the United States Code, Section 881(a)(4) deals specifically with forfeiture of vehicles and states as follows:
 All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for CT Page 8675 use, to transport, or in any manner to facilitate
the transportation, sale, receipt, possession, or concealment of property described in paragraph (1), (2), or (9) . . .
21 U.S.C. § 881 (a)(4) (emphasis added). The Connecticut forfeiture statute, on the other hand, does not include the "facilitation" language and is not limited to forfeiture of automobiles. Our forfeiture statute applies to "any property believed to be possessed, controlled, designed or intended for use or which is or has been used or which may be used as a means of committing any criminal offense . . . ," C.G.S. §54-33g(a), and "property that has been possessed, controlled or designed for use, or is or has been or is intended to be used, with intent to violate or in violation of any of the criminal laws of this state,. . . ." C.G.S. § 54-33g(c).
Sections § 54-33g(a) and (c), however, specifically do not
apply to property which is a "means" of committing illegal drug offenses or "used with intent to violate or in violation of" Connecticut controlled substances laws. Automobiles, therefore, used as a means of committing or in violation of Section 21a-267
(prohibited acts regarding drug paraphernalia), 21a-277 (illegal manufacture, distribution, sale, prescription, dispensing of a controlled substance), 21a-278 (illegal manufacture, distribution, sale, prescription or administration of a controlled substance by a non-drug dependent person) and 21a-279
(illegal possession of a controlled substance) can no longer be forfeited pursuant to C.G.S. § 54-33g. This has been true since 1989 when the legislature amended subsections (a) and (c) to add the exceptions for violations of the foregoing drug statutes.See, P.A. 89-259 and Notes to Section 54-33g. Obviously,State v. Connelly, supra, and its progeny applied the federal authority to forfeiture of vehicles pursuant to the old Section 51-33g. After, October 1, 1992, however, those cases and the federal "facilitation" standard became inapplicable to non-drug forfeitures.
Effective October 1, 1989, money and property related to illegal sale or exchange of controlled substances or proceeds can be forfeited only pursuant to the new drug forfeiture statute, Section 54-36h. Notably, in Section 54-36h, the legislature included the "facilitation" language by providing that property "used or intended for use, in any manner or part, CT Page 8676 to commit or facilitate the commission of a violation for pecunary gain of section 21a-277 or 21a-278" shall be subject to forfeiture. C.G.S. § 54-36h(a)(4). Significantly, however, Sections 54-36h, only applies to drug trafficking offenses under Section 21a-277 or 21a-278. If does not apply to crimes regarding drug paraphernalia (21a-267) or possession of controlled substances (21a-279).
Clearly, in 1989, rather than establish a separate statutory scheme for the forfeiture of property related to drug trafficking in Section 54-36h, the legislature could have simply amended Section 54-33g, an already existing forfeiture statute which had been used until then to forfeit property of drug dealers, and added the "facilitation" language which it ultimately included in Section 54-36h. That the legislature failed to amend Section 54-33g accordingly, that it specifically excluded drug offenses from its purview, and that it increased the State's burden of proof to clear and convincing evidence, means that, effective October 1, 1989, Section 54-33g has a narrower scope than it had previously.
In light of the 1989 amendment to Section 54-33g, excluding the forfeiture of property related to drug dealing and the subsequent enactment of Section 54-36h, which expanded the scope of property subject to forfeiture in drug trafficking cases, this court finds that Section 54-33g requires a greater nexus than "facilitation" between the property sought to be forfeited and the alleged violation of State law. One need not look further than the statute itself to find the necessary connection required to justify forfeiture pursuant to Section 54-33g, although at first blush, the statute appears to offer little guidance. Subsection (a) refers to property which is a "means" of committing any criminal offense. Subsection (c) omits the word "means" and speaks of property used or intended to be used "with intent to violate or in violation of any of the criminal laws of this state. . . ." Moreover, "means" is not included in subsection (d), which refers to property "kept with intent to violate or in violation of the criminal laws of this state. . . ." It is a basic rule of statutory construction, however, that a statute should be construed as a whole, reconciling its separate parts, in order to give it a reasonable overall interpretation. Statewide Grievance Committee v.Rozbicki, 211 Conn. 232, 241, 558 A.2d 986 (1989), appeal afterremand, 219 Conn. 473, 595 A.2d 819 (1991), cert. denied,503 U.S. ___, 112 S.Ct. 1170 (1992); Rustici v. Stonington, CT Page 8677174 Conn. 10, 13, 381 A.2d 532 (1977); Orticelli v. Powers,197 Conn. 9, 13-14, 495 A.2d 1023 (1985); Ruotolo v. Inland Wetlands Agency,18 Conn. App. 440, 448, 558 A.2d 1021 (1989).
Read as a whole, therefore, the only reasonable interpretation of Section 54-33g is that the property to be forfeited under this statute must be the "means" of committing the underlying criminal offense. Accordingly, the State must demonstrate, by clear and convincing evidence, that the defendant vehicle was a "means" of violating C.G.S. § 53a-83. Stated differently, the defendant vehicle must be shown to have been instrumental, not incidental, to the commission of the crime of solicitation of prostitution.[4]
Moreover, Section 54-33g, being a forfeiture statute, must be read and applied strictly. State v. One 1981 BMW Automobile,5 Conn. App. 540, 542, 500 A.2d 961 (1985), citing State v. Sabia,1 Conn. App. 315, 318, 471 A.2d 673 (1984). "As a general rule, forfeiture is not favored, and statutes providing for forfeiture are strictly construed." United States v. One 1977 Cadillac, Etc.,644 F.2d 500, 501 (5th Cir. 1981), citing United States v. One1936 Model Ford Deluxe V-8 Coach, 307 U.S 219, 226 (1939). Where Connecticut courts have upheld the forfeiture of property pursuant to General Statutes § 54-33, there existed a greater nexus between the property and the underlying criminal activity than is present in the instant case. See, State v. One 1977 Buick Automobile,196 Conn. 471, 493 A.2d 874 (1985) (the automobile had been used to store or conceal gambling records); State v. Connelly, supra,
(cocaine found in car); State v. Gaudio, 19 Conn. App. 588,562 A.2d 1156 (1989) (drugs found in vehicle); State v. One 1976 Chevrolet
Van, 19 Conn. App. 195, 562 A.2d 62 (1989) (marijuana found in Van and van was used to transport illegal drugs); State v. One1981 BMW, 15 Conn. App. 589, 546 A.2d 879 (1988) (vehicle used to commit crime of possession of cocaine); and State v. One 1981BMW Automobile, 5 Conn. App. 540, 500 A.2d 961 (1985) (cocaine and drug paraphernalia were discovered in the vehicle).
The legislative history of C.G.S. § 54-33 also suggests that the statute should be narrowly construed. In 1963, the House and Senate passed Conn. Pub. Acts No. 652, "An Act Concerning Searches and Seizures." The act addressed "the method and procedure of obtaining a search warrant. . . ." Conn. Joint Standing Committee Hearings, Judiciary and Governmental Functions, Pt. 3, 1963 Sess., p. 54. The act also discussed the CT Page 8678 forfeiture of property seized pursuant to a search warrant and adjudged to be a nuisance. Conn. Pub. Acts No. 652 § 8 (1963).
Section 1 of the Act, codified in the 1963 supplement to the General Statutes as General Statutes § 54-33a(b)(1) and titled "Issuance of search warrant," stated that a search warrant may be issued if there was probable cause "to believe that any property (a) possessed, controlled, designed or intended for use or which is or has been used or which may be used as the means of committing any criminal offense . . . is within or upon any place or thing. . . ." Conn. Pub. Acts No. 652 § 1 (1963). According to Major Williams of the Connecticut State Police, the original drafter of the bill, who testified before the Judiciary Committee, this part of the language of the Connecticut statute was quoted directly from Rule 41 of the Federal Rules of Criminal Procedure, titled "Search and Seizure." Conn. Joint Standing Committee Hearings, Judiciary and Governmental Functions, Pt. 3, 1963 Sess., p. 57. In addition, Major Williams noted that the words of the section implicated property used in "any criminal action directly." Id. Therefore, since the above language is identical to the current language of General Statutes § 54-33g(a) which discusses the notice procedure regarding property which was legally seized and is subject to forfeiture as a nuisance, Section 54-33g should also be read to require a direct connection between the criminal activity and the seized property.
Section 8 of Public Acts No. 652, the predecessor of the present General Statutes § 54-33g(a), (b) and (c), discussed the adjudication and forfeiture, as a nuisance, of property seized pursuant to a search warrant. Prior to 1985, forfeitures under General Statutes § 54-33g were limited to property seized pursuant to search warrants. See, State v. One 1977 BuickAutomobile, 196 Conn. 471, 479, 493 A.2d 874 (1985). Section 8 provided for the forfeiture of property if the judge or court found that the property had been "kept with intent to violate or in violation of any of the criminal laws of this state. . . ." Conn. Pub. Acts No. 652 (1963).
In 1965, Conn. Pub. Acts No. 215, "An Act Concerning Summons To Owners On Seizure of Property," was passed by the House and Senate. The act amended General Statutes § 54-33g. Conn. Pub. Acts No. 215 (1965) provided that "[w]hen pursuant to subdivision (1) of subsection (a) [currently subsection (b)] of section 54-33a any property has been seized, which the state CT Page 8679 claims to be a nuisance and desires to have destroyed or disposed of in accordance with the provisions of this section, the judge or court issuing the warrant shall. . . . cause to be left with the owner of the property so seized, . . . a summons notifying the owner and all others whom it may concern to appear before such judge or court, . . . not less than six nor more than twelve days after the service thereof. . . ." According to Representative Boyd, this Bill was designed to give the court "a method of procedure" when the state desires to have property which it seized "destroyed as a nuisance." 11 H.R. Proc., pt. 5, 1965 Sess., p. 28.
In 1972, General Statutes § 51-33g was amended by Conn. Pub. Acts No. 49 which provided that "if the judge or court finds . . . that the property has been [kept] POSSESSED, CONTROLLED OR DESIGNED FOR USE, OR IS OR HAS BEEN OR IS INTENDED TO BE USED, with intent to violate or in violation of any of the criminal laws of this state. . . ." As a result, with respect to the present General Statutes § 54-33g(c), the word "kept" was replaced by the above capitalized language which is almost identical to the language used in General Statutes § 54-33a
which, as discussed above, concerns the issuance of search warrants.
In 1984, Conn. Pub. Acts No. 540 was passed which amended General Statutes § 54-33g(a) by deleting the reference to property seized "pursuant to subdivision (1) of subsection (b) of section 54-33a" and substituting the actual language of that subdivision which refers to any property "believed to be possessed, controlled, designed or intended for use or which is or has been used or which may be used as a means of committing any criminal offense. . . ." General Statutes § 54-33a(b)(1);see, General Statutes § 54-33g(a).
Finally, in 1989, as previously discussed, Conn. Pub. Acts. No. 259 amended subsection (a) of General Statutes §54-33g to add an exception for "a violation of Section 21a-267, 21-277,21a-278 or 21a-279," thereby making General Statutes § 54-33g
inapplicable to property seized in drug cases. This amendment also increased the State's burden of proof from a preponderance of the evidence to clear and convincing evidence.
The foregoing revisions of Section 54-33g, the enactment of a broad drug forfeiture statute without amending Section 54-33g
to accommodate drug forfeiture cases, and the increase in the CT Page 8680 burden of proof needed to justify forfeiture, leads to the conclusion that Section 54-33g should be narrowly construed and requires a nexus between the property sought to be forfeited which amounts to an instrumentality of the underlying crime.[5]
As previously noted, in the instant case, the connection between the defendant 1982 Nissan automobile and the crime of solicitation of prostitution is that the defendant drove it to the scene of the crime and was seated inside when he solicited the police decoy. That the defendant was seated inside the 1982 Nissan when he solicited sex from the police decoy, even when coupled with the fact that the defendant used the automobile to drive to where the prostitute was located, is still an insufficient nexus to justify forfeiture in this case. While the State is correct that the crime of solicitation of prostitution is complete when the offer for the sex is made, in this case, only one party to the transaction was in the vehicle. An indispensible party, the "prostitute," was standing outside on the sidewalk, and the crime could not have been completed without her participation. Additionally, the vehicle provided minimal privacy because if the decoy could hear the defendant soliciting her, so could anyone passing by or standing in the proximity.
In sum, the vehicle in this case was only incidental, not instrumental, to the commission of the crime of solicitation of a prostitute. It was not a "means" of committing the crime. To hold otherwise would broaden the application of this statute to property only minimally connected to illegal activity.[6]
Parenthetically, it is interesting to note that a few states have dealt with the issue of forfeiture of vehicles used by "johns" in prostitution cases. In Property Clerk, New YorkCity Police Department v. Small, 582 N.Y.S.2d 932
(N.Y.Sup.Ct. 1992), forfeiture of a "johns" automobile was ordered under the New York City Administrative Code which allows the Property Clerk of the New York City Police Department to take possession of "all property . . . suspected of having been used as a means of committing crime or employed in aid or furtherance of crime. . . ." In that case, the "john" approached the undercover police officer in a known prostitution area, solicited her to perform oral sex for $20 and she agreed. When the "john" asked her to get into his car to perform the act, she told him she would meet him around the corner. When the "john" drove around the corner, he was arrested. Id. at 933-34. The Bronx County Supreme Court found a sufficient nexus between the CT Page 8681 underlying crime of patronizing a prostitute to justify the forfeiture because the owner of the vehicle suggested that the sexual act be committed in the vehicle and the decoy agreed. Thus, the vehicle was found to have been used "in aid or furtherance of crime." Id.
The facts of Property Clerk, New York City PoliceDepartment v. Small, supra, while similar, can be factually and legally distinguished from the instant case. First, in the present case, unlike the New York case, there was no suggestion by the defendant that the sexual act be committed in the vehicle. The New York court found that since the respondent suggested that the sexual act be committed in his vehicle and the undercover officer agreed, "the vehicle was employed `in aid on furtherance of crime.' The vehicle facilitated the crime by permitting the agreed act to be performed in an atmosphere of relative privacy." Id., at 934-35. Secondly, the language of the New York City Administrative Code is different from the language of General Statutes § 54-33g. The language "employed in aid or furtherance of crime" is broader in scope than the language of the Connecticut in rem forfeiture statute at issue here.
In Colorado, the Colorado Court of Appeals held that the vehicle which the defendant, a prostitute, used to drive to a motel room at which she solicited a police officer for prostitution "was subject to forfeiture under Colorado Sess. Laws 1983, ch. 191 § 16-13-303 (2) at 684, then in effect, because it was used to aid or abet the use of the motel as a place of soliciting for prostitution. . . ." People v. One 1979 Volkswagon,773 P.2d 619 (Colo.App. 1989). The Colorado court found that the People established a sufficient nexus between the property and the criminal activity and thus, the forfeiture was proper. Id., 621. People v. One 1979 Volkswagon, however, can also be distinguished from the case at bar. First, in the Colorado case, unlike the present case, the owner and driver of the vehicle was the prostitute who used the vehicle as an instrument of her trade. Second, the "aid and abet" language relied on by the Colorado Court of Appeals is different from the language of General Statutes § 54-33g.
Additionally, the city of Portland, Oregon passed an ordinance effective December 6, 1989, which provides for the forfeiture of vehicles declared to be a nuisance. Portland, Or., Code ch. 14.90, § 14.90.010 (1990). Under the ordinance, CT Page 8682 "[a] vehicle within which an act of prostitution as . . . defined in ORS 167.007, has occurred" is subject to forfeiture as a nuisance. Portland, Or., Code ch. 14.90, § 14.90.010 (1996). Also, "[c]onduct involving violation of, solicitation to violate, attempt to violate or conspiracy to violate any provision of ORS 167.002 TO 167.027 is hereby declared to be prohibited conduct, and any property that is used to commit or which is proceeds of the prohibited conduct is hereby declared to be subject to forfeiture, as limited by the provisions of 14.90; 020." Portland, Or., Code ch. 14.90, § 14.90.030 (1990). In Oregon, "[a] person commits the crime of prostitution if . . . [t]he person pays or offers or agrees to pay a fee to engage in sexual conduct or sexual contact." Or. Rev. Stat. § 167.007
(1989).
Hence, under the facts of the present case, the defendant vehicle would be subject to forfeiture under Oregon law. However, since Oregon statutes and ordinances do not apply to Connecticut cases, the court cannot rely on them in this case. Furthermore, the Oregon ordinance was specifically drafted so that it would subject to forfeiture the vehicles of "johns" who solicit prostitutes. To date, Connecticut has not drafted a forfeiture law applying specifically to prostitution cases. Instead, General Statutes § 54-33g, upon which the State relies, applies generally to any criminal activity. As discussed above, based on the facts of this case, the defendant's vehicle is not subject to forfeiture as a nuisance.
 CONCLUSION
For the foregoing reasons, this court finds that the State has failed to prove by clear and convincing evidence that the defendant 1982 Nissan automobile was possessed, controlled or designed for use, or that it had been or was intended to be used, with intent to violate C.G.S. § 53-83, solicitation of prostitution. The defendant vehicle was merely used to drive to the location where the defendant solicited the "prostitute." While the defendant was seated inside the car when he solicited the police decoy, the automobile was only incidental, not instrumental, to the commission of the crime of patronizing a prostitute. Connecticut General Statutes § 54-33g requires a greater nexus between the underlying crime and the vehicle than is present in the instant case in order to declare it a nuisance and be forfeited. CT Page 8683
While the court may not speculate or intimate a view on future cases, this decision should not be construed to hold that a "john's" car could never be forfeited in a prostitution case. A different outcome might result if, for instance, the "john" and the "decoy" discuss using the "john's" automobile as the situs for performing the sexual act, or if the prostitute uses her car as a tool of her trade. And, of course, if the legislature deems it appropriate that the quality of life in urban neighborhoods should be improved by the forfeiture of cars driven by "johns" to solicit prostitutes, it can enact specific legislation to achieve that goal. Each case must be viewed and judged on its own facts.
In conclusion, therefore, for all the foregoing reasons, the State's request for an order declaring the defendant 1982 Gray Nissan a nuisance and order of forfeiture is hereby denied. The 1982 Gray Nissan which is the subject of this case is ordered returned to the owner, Gezim Mjshtri, forthwith.
IT IS SO ORDERED.
Dated at Hartford, Connecticut, this 10th day of February, 1993.
By The Court,
Carmen E. Espinosa, J.